JAMES H. BAKELAAR *v.* CITY OF WEST HAVEN ET AL. (11519)

PETERS, PARSKEY, GRILLO, SPONZO and MENT, Js.

Argued January 13—decision released April 24, 1984

*Keith B. Gallant,* with whom were *Edward Gallant* and *Peter Culver,* and, on the brief, *Vincent R. Falcone* and *Jacqui F. Lazo,* for the appellant (named defendant).

*Bruce L. Levin,* with whom, on the brief, was *Serge G. Mihaly,* for the appellee (defendant United States Fidelity and Guaranty Company).

*William F. Gallagher,* with whom, on the brief, were *Robert F. Moran* and *Elizabeth A. Dorsey,* for the appellee (defendant Liberty Mutual Insurance Company).

*W. Paul Flynn,* for the appellee (plaintiff).

SPONZO, J. In this appeal from a judgment of the Appellate Session of the Superior Court, the defendant city of West Haven raises two principal claims of error, namely, that the court (1) lacked jurisdiction to entertain the appeal of the defendant United States Fidelity and Guaranty Company (hereinafter USFG) and (2) erroneously concluded that the plaintiff, James Bakelaar, (hereinafter the claimant) was entitled to an election of remedies.

The undisputed facts may be summarized as follows: The claimant was a regular, paid, uniformed member of the West Haven police department since July 15, 1966. Upon entry into the service of the defendant city, the claimant underwent a physical examination which failed to reveal any evidence of hypertension or heart disease. On August 16, 1976, while actively pursuing an alleged criminal, the plaintiff suffered chest pain which was diagnosed as angina pectoris. The next day, while carrying out routine duties at work, he collapsed and was hospitalized with a diagnosis of angina pectoris and arteriosclerotic heart disease. On October 8, 1976, while resting at home, he sustained an acute myocardial infarction and has since been totally disabled.

On March 15, 1977, the claimant by his attorney filed a notice of claim[1] for compensation. Prior to the commencement of the hearing, the claimant's counsel stated, "Mr. Bakelaar is here making a claim under 7-433c of the Connecticut General Statutes. . . . Our position . . . is we're pursuing the benefits of 7-433c."

---

[1] "FORM FOR NOTICE OF CLAIM FOR COMPENSATION

To the Compensation Commissioner of the THIRD Congressional District.

To CITY OF West Haven of 355 Main Street, West Haven, CT 06516.

Notice is hereby given that the undersigned, who while in the employ of West Haven (Police) at West Haven on the 6th day of Oct., 16th day of August, 1976, 19th day of August, 1976 sustained injuries arising out of and in the course of his employment as follows: (State nature of injury in ordinary language.) [H]eart disease/hypertension – claim is being made under Chapter 568 Workmen's Compensation Act, Section 7-433 (a) and 7-433 (c) claims compensation in his own interest.

The undersigned is of full age.

Dated at New Haven, Connecticut this 15th day of March, 1977.

JAMES H. BAKELAAR
c/o Kopkind, Flynn &
Raccio, P.C.

By Charles L. Flynn
Attorney"

General Statutes § 7-433c[2] provides benefits for policemen or firemen disabled or dead as a result of hypertension or heart disease.

At the time of the claimant's disability the defendant Liberty Mutual Insurance Company (hereinafter Liberty) was the city's workers' compensation insurance carrier. Prior to the date of disability, USFG and the defendant Commercial Union Insurance Company (hereinafter Commercial Union) had been workers' compensation insurance carriers for the city. At the time of the hearing before the compensation commissioner, USFG and Commercial Union appeared under protest as a result of Liberty's request to the commissioner (and her apparent compliance therewith) that these insurers be "cited in" by her. Thereafter, all three

---

[2] "[General Statutes] Sec. § 7-433c. BENEFITS FOR POLICEMEN OR FIRE-MEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retire-

insurers were represented at the hearing and named as parties in both the commissioner's and the review division's decisions.

The compensation commissioner heard the evidence and concluded that the city was liable and that the claimant was entitled to the benefits provided by General Statutes § 7-433c as a result of suffering a myocardial infarction. The city appealed this finding and award to the compensation review division,[3] claiming that there was adequate evidence that the claimant's disability arose out of and in the course of his employment and that he was entitled to benefits under chapter 568 of the General Statutes, the Workers' Compensation Act.

The review division affirmed the commissioner's finding and award, including the claimant's entitlement to benefits under § 7-433c, but remanded the matter for further findings on whether the city might also be lia-

---

ment system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

[3] USFG argues that the compensation review division lacked subject matter jurisdiction over the city's appeal. As noted in *Grover* v. *Manchester*, 165 Conn. 615, 617–18, 353 A.2d 719 (1973), the procedural provisions of chapter 568 of the General Statutes are applicable to claims under § 7-433c of the General Statutes, and therefore the city's appeal was proper.

ble under chapter 568. The review division stated "if a claimant brings a 7-433c claim, he does not waive Title 31 rights. Once the proceeding is initiated by a claim either under 7-433c or Chapter 568, any of the parties may raise any issues encompassed by either or both the Title 7 and Title 31 legislation and the Commissioner should decide all issues presented."

The defendant USFG appealed the order of the review division to the Appellate Session of the Superior Court, which set aside the order and remanded the case with direction to enter judgment in accordance with the finding and award of the compensation commissioner.

I

The first assignment of error we shall consider is the city's claim that the Appellate Session of the Superior Court lacked jurisdiction to entertain the appeal because USFG was not an aggrieved party under General Statutes § 31-301b.[4] This section is applicable to appeals from decisions involving awards under § 7-433c as well as those arising under the Workers' Compensation Act. In *Grover* v. *Manchester,* 165 Conn. 615, 617–18, 353 A.2d 719 (1973), we determined that "[n]othing, however, in its legislative history or in its statement of purpose . . . persuades us that § 7-433c was intended by the legislature to require each municipality in Connecticut to create separate administrative machinery duplicating that already available under the Workmen's Compensation Act for resolving claims by firemen and policemen and further to burden by additional litigation of such claims the courts as well as the municipalities."

---

[4] "[General Statutes] Sec. 31-301b. APPEAL OF DECISION OF COMPENSATION REVIEW DIVISION. Any party aggrieved by the decision of the compensation review division upon any question or questions of law arising in the proceedings may appeal the decision of the compensation review division to the appellate session of the superior court."

Before we consider this claim on its merits, we shall discuss USFG's contention that this appeal should be dismissed because the issue was not distinctly raised at trial. Practice Book § 3063.[5] A question whether the court has jurisdiction must first be determined even though the issue was not raised below. *Guida* v. *Public Utilities Commission,* 166 Conn. 328, 330–31, 348 A.2d 613 (1974). "It is well settled that the question of aggrievement is a jurisdictional one and that claims of aggrievement present an issue of fact for the determination of the trial court with the burden of proving aggrievement resting upon the plaintiffs who have alleged it." *Hartford Distributors, Inc.* v. *Liquor Control Commission,* 177 Conn. 616, 622, 419 A.2d 346 (1979); *Nader* v. *Altermatt,* 166 Conn. 43, 59, 347 A.2d 89 (1974). Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the appeal. *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978). "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, 'the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party . . . must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' " *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978); *Nader* v. *Altermatt,* supra, 51.

The record clearly reflects that the defendant Liberty requested, and the commissioner apparently

[5] "[Practice Book] Sec. 3063. — ERRORS CONSIDERED The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

agreed, that the compensation commissioner cite as parties USFG and Commercial Union. Both defendants USFG and Commercial Union appeared at the hearing under protest and participated in the hearing. At no time did the defendant city object to the participation of the prior insurance carriers, USFG and Commercial Union. In her finding and award the compensation commissioner named all the insurance carriers as did the compensation review division in its decision which ordered this matter "remanded . . . for further Findings of Fact concerning any liability which might adhere to the Respondent, City of West Haven, and its respondent insurers under chapter 568 . . . ."

"Mere status, however, as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purposes of appellate review." *Hartford Distributors, Inc.* v. *Liquor Control Commission,* supra, 620; *Beckish* v. *Manafort,* supra, 419. The review division's decision to remand the case for determination of USFG's liability under chapter 568 with respect to the plaintiff's claim, however, constitutes a specific and injurious effect upon USFG's interests. "Aggrievement is established if 'there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected.' " *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980); *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953). USFG was aggrieved by the decision and accordingly its appeal pursuant to § 31-301b was properly before the Appellate Session.

## II

The determinative issue raised by the city's appeal is whether a claimant, qualified for compensation, may

elect recovery under either § 7-433c or chapter 568, the workers' compensation statutes, when the injury arose out of or in the course of employment.

The purpose of chapter 568 of the General Statutes is to provide compensation for any injury "arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979); *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968). In order to recover under the Workers' Compensation Act, "[t]he employee has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment." *McNamara* v. *Hamden,* 176 Conn. 547, 550, 398 A.2d 1161 (1979).

Section 7-433c, while similar to the workers' compensation statutes, is a separate and distinct legislation. This statute " 'simply [provides] special compensation, or even an outright bonus, to qualifying policemen and firemen,' [and] serves a proper public purpose . . . ." *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 668, 425 A.2d 131 (1979). The city contends that the workers' compensation statutes are the exclusive remedy for injuries arising out of and in the course of employment, even if the injuries claimed are compensable under § 7-433c. We do not agree.

General Statutes § 7-433c, as amended, was enacted in 1971 in response to *Ducharme* v. *Putnam,* 161 Conn. 135, 285 A.2d 318 (1971), where this court held that the conclusive presumption prescribed by General Statutes § 7-433a was in contravention of the due process clauses of both the state and federal constitutions.[6] Thereafter, the validity of § 7-433c was sustained in

---

[6] The city claims that the Appellate Session erred by failing to consider the relevance of § 7-433a. The city argues that a void statute cannot operate to repeal a valid statute, and therefore that the 1967 version of § 7-433a

*Grover* v. *Manchester,* 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975).

The procedure for determining recovery under § 7-433c is the same as that outlined in chapter 568, presumably because "the legislature saw fit to limit the 'procedural avenue' for bringing claims under § 7-433c to that already existing under chapter 568 rather than require the duplication of the administrative machinery available . . . and further burden the courts and the municipalities . . . ." *Plainville* v. *Travelers Indemnity Co.,* supra, 671–72. The city contends that because § 7-433c is administered through chapter 568 procedures, it is also bound by the exclusive remedy provisions contained within the workers' compensation statutes. Specifically, the city argues that a § 7-433c claim is not delineated as an exception to the exclusiveness of the act, nor is the plaintiff within the category of persons who may elect not to be covered by the act.[7] Therefore, if the plaintiff's claim falls within chapter 568 he may not elect recovery under § 7-433c.

To adopt this reasoning would contravene the legislative mandate of § 7-433c, which "specifically requires the payment of compensation to firemen and policemen who have successfully passed a physical examination which failed to reveal any evidence of hypertension or heart disease and who subsequently die or are disabled as a result of such conditions." *Plainville* v. *Travelers Indemnity Co.,* supra, 670. Furthermore, § 7-433c, unlike the workers' compensation statutes, confers benefits to qualifying claimants for impairments

is relevant. It is axiomatic that a statute declared unconstitutional is unenforceable, but is not repealed or abolished. *State* v. *Menillo,* 171 Conn. 141, 147, 368 A.2d 136 (1976).

[7] General Statutes § 31-293 (liability of third persons); § 31-293a (fellow employee motor vehicle exception); § 31-275 (5) and (6) (specific employees may elect not to be covered by the act.)

sustained "either off duty or on duty," without proof that the condition arose out of and in the course of employment. Recovery under § 7-433c is not premised upon the plaintiff showing that the "disease resulted from the employee's occupation or that it occurred in the line and scope of his employment." *Plainville* v. *Travelers Indemnity Co.,* supra, 670.

The imposition of a burden to show whether injuries occurred "on duty" is not warranted by the relief afforded to claimants under § 7-433c. In fact, the statute specifically states that "[n]otwithstanding any provision of chapter 568" a qualifying claimant shall receive compensation. "The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979); *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65 (1972). Where there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981).

A final claim presented by the defendant city involves an alleged denial of its right to equal protection of the law as well as to due process. The city carries insurance coverage for claims under the Workers' Compensation Act but has no coverage on § 7-433c claims. It contends that if § 7-433c is interpreted to include those policemen and firemen whose disability arose out of and in the course of their employment as well as those disabled not in the course of their employment, this is an overbroad classification and deprives the city of a vested property right, thereby denying it equal protec-

tion and due process of the law. This claim is without merit. *Grover* v. *Manchester,* supra, has upheld the constitutionality of § 7-433c despite the claim that it unconstitutionally constituted "class preference" legislation. In *Plainville* v. *Travelers Indemnity Co.,* supra, 673, the court made it clear that § 7-433c covers all policemen and firemen whether they qualified under the workers' compensation laws or not. There we held that § 7-433c "does not compel a conclusion that the statute implicitly includes an affirmative legislative finding of work-relatedness in all cases."

The question of coverage and payment of compensation for claims under § 7-433c was debated in the House of Representatives wherein the sponsor of the bill stated that a particular municipality "could either choose to insure against this particular risk or pay for it out of the general revenues of the municipality if they chose to be a self-insurer for the purposes of this legislation." See *Plainville* v. *Travelers Indemnity Co.,* supra, 674 n.3. That the defendant city in this case chose to be a self-insurer for the purposes of § 7-433c therefore gives that defendant no special right to insist that the plaintiff's claim be governed by workers' compensation.

There is no error.

In this opinion the other judges concurred.