HAROLD J. COLLINS *v.* CITY OF WEST HAVEN ET AL.
(13465)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued January 4—decision released March 21, 1989

*Edward Gallant,* with whom were *Keith Bradoc Gallant* and, on the brief, *Betty G. Levy,* for the appellant (named defendant).

*W. Paul Flynn,* with whom, on the brief, were *Charles L. Flynn* and *Howard A. Lawrence,* for the appellee (plaintiff).

CALLAHAN, J. The named defendant, the city of West Haven (city), appeals from the decision of the compensation review division of the workers' compensation commission dismissing its appeal and denying its motion to open and modify the award of the workers' compensation commissioner for the third district in favor of the plaintiff, Harold J. Collins. The sole issue on appeal is whether the commissioner had jurisdiction to award the plaintiff compensation benefits under General Statutes § 7-433c.[1] Because the plaintiff's notice

---

[1] "[General Statutes (Rev. to 1972)] Sec. 7-433c. BENEFITS FOR POLICE-MEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examina-

satisfied the requirements of § 31-294,[2] we conclude that the commissioner had jurisdiction to award such benefits. There is, therefore, no error.

This case revolves around the interrelationship of the Workers' Compensation Act; General Statutes, tit. 31, c. 568; and General Statutes § 7-433c. The Workers' Compensation Act was enacted to "provide compensation for any injury 'arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer.' *Jett* v. *Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979); *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968)." *Bakelaar* v. *West Haven,* 193 Conn. 59, 67, 475

tion failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

[2] General Statutes (Rev. to 1972) § 31-294 provides in relevant part: "NOTICE OF INJURY AND OF CLAIM FOR COMPENSATION. Any employee who has sustained an injury in the course of his employment shall forthwith notify his employer, or some person representing him, of such injury; and, on his failure to give such notice, the commissioner may reduce the award of compensation proportionately to any prejudice which he finds the employer has sustained by reason of such failure; but the burden of proof with respect to such prejudice shall rest upon the employer. No proceedings for compensation under the provisions of this chapter shall be maintained unless

A.2d 283 (1984). Heart disease and hypertension are just some of the many ailments compensable under the act. See, e.g., *McDonough* v. *Connecticut Bank & Trust Co.,* 204 Conn. 104, 111–16, 527 A.2d 664 (1987). In order to recover under chapter 568, however, " '[t]he employee has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment.' *McNamara* v. *Hamden,* 176 Conn. 547, 550, 398 A.2d 1161 (1979)." *Bakelaar* v. *West Haven,* supra, 67. Section 7-433c, on the other hand, was enacted to provide "special compensation" to qualifying policemen and firemen who die or become disabled as a result of hypertension or heart disease. Id. It requires the employer to pay compensation to those officers "who have successfully passed a physi-

a written notice of claim for compensation is given within one year from the date of the accident or from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within such two-year period or within one year from the date of death whichever is later. Such notice may be given to the employer or the commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting therefrom, or the date of the first manifestation of a symptom of the occupational disease and the nature of such disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. If there has been a hearing or a written request for a hearing or an assignment for a hearing within said one-year period from the date of the accident or from the first manifestation of a symptom of the occupational disease, as defined herein, as the case may be, or if a voluntary agreement has been submitted within said period of one year, or if within said period of one year an employee has been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as hereafter provided in this section, no want of such notice of claim shall be a bar to the maintenance of proceedings and in no case shall any defect or inaccuracy of such notice of claim be a bar to the maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning such personal injury and was prejudiced by the defect or inaccuracy of such notice. . . ."

cal examination which failed to reveal any evidence of hypertension or heart disease and who subsequently die or are disabled as a result of such conditions" whether or not the " 'disease resulted from the employee's occupation or . . . occurred in the line and scope of his employment.' " Id., 68–69; *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 670, 425 A.2d 131 (1979). An employee may, if the facts so warrant, elect to proceed under either chapter 568 or § 7-433c. *Bakelaar* v. *West Haven,* supra.

It is undisputed in the present case that the plaintiff was a regular, paid, uniformed member of the West Haven police department. Upon entry into the service of the city, the plaintiff underwent a physical examination that failed to reveal any evidence of hypertension or heart disease. On May 2, 1973, while off duty, the plaintiff suffered a heart attack and has since been totally disabled.

On July 6, 1973, the plaintiff filed a "Form for Notice of Claim for Compensation" with the commissioner. The notice, which is a standardized form provided by the workers' compensation commission, required the plaintiff to fill in basic identification information and to state the nature of his injury. This line of the form reads: "Notice is hereby given that the undersigned, who while in the employ of . . . . . (Name of Employer) . . . . . at . . . (Town) . . . on the . . . . day of . . . . . . . 19 . . . sustained injuries arising out of and in the course of his employment as follows: (State nature of injury in ordinary language)." The plaintiff in this case typed the following response: "Acute myocardial infarction — hypertension, heart disease." A copy of the plaintiff's notice form was sent to the city and to its insurance carrier, Commercial Union Insurance Company (Commercial Union), with whom the city had contracted to insure itself against workers' compensation claims. The city

was self-insured for claims brought under § 7-433c. See *Plainville* v. *Travelers Indemnity Co.,* supra.

It was not until July 16, 1975, that a hearing was held before the commissioner on the matter. At this hearing Commercial Union contested its liability to pay compensation under chapter 568 because it considered it doubtful that the plaintiff's illness resulted from his employment.[3] At that hearing the city did not make an appearance to contest its liability under § 7-433c and, therefore, the commissioner decided to delay the rendering of an award. The commissioner rescheduled a hearing for January 21, 1976, to address the claim under § 7-433c and notified the city that it should attend. After the hearing the commissioner issued a finding in favor of the plaintiff awarding him benefits under § 7-433c. In limiting its award to such benefits, the commissioner refused to make a ruling as to the responsibility of Commercial Union under chapter 568.

The city appealed the commissioner's award to the Court of Common Pleas in April, 1976. Prior to a decision by the court, the plaintiff filed a motion to remand the matter to the commissioner for further proceedings. The plaintiff's motion was granted by the court on December 22, 1977. The remand remained pending before the commissioner until November 30, 1981, when the city filed a motion to open and modify the commissioner's award pursuant to General Statutes § 31-315 "to eliminate all references to § 7-433c, and to provide for liability, if any, based solely on Chapter 568." On April 23, 1986, the commissioner denied the city's motion.

On April 30, 1986, the city filed a petition with the compensation review division for reconsideration of the

---

[3] Commercial Union initially notified the commissioner and the plaintiff of its intent to contest liability to pay compensation under chapter 568 on July 10, 1973.

commissioner's denial of its motion. The review division refused to find that the commissioner had abused her discretion and upheld her decision denying the city's motion stating that "the use by Claimant of the words 'heart' and 'hypertension' in his own description of his injury certainly justified the Commissioner's interpretation of that choice [of remedies] to be one under Sec. 7-433c." It thereafter dismissed the city's appeal.[4] On April 22, 1988, the city filed an appeal from the review division's decision in the Appellate Court. We transferred the matter to ourselves, pursuant to Practice Book § 4023.

On appeal, the city argues that the review division erred in refusing to find that the commissioner had abused her discretion when she denied its motion to open and modify the 1976 award in favor of the plaintiff. According to the city, the commissioner lacked subject matter jurisdiction to award the plaintiff benefits under § 7-433c because the plaintiff had failed specifically to notify the city of his intent to proceed under that section within one year from the date of the accident as required by § 31-294. Although the plaintiff filed a notice within weeks of his injury, the city contends that notice was notice only of a workers' compensation claim. The city argues that because "§ 7-433c" was not typed in the notice and not adverted to until the hearing before the commissioner in 1976, there was no timely notice of the § 7-433c claim. We disagree.

As we have stated on numerous occasions, while the Workers' Compensation Act and § 7-433c are separate pieces of legislation, "[t]he procedure for determining recovery under § 7-433c is the same as that outlined in chapter 568, presumably because 'the legislature saw fit to limit the "procedural avenue" for bringing claims

---

[4] The city's motion to reargue the judgment of the review division was denied by the division on May 9, 1988.

under § 7-433c to that already existing under chapter 568 rather than require the duplication of the administrative machinery available [under the Workers' Compensation Act] and further burden the courts and the municipalities [with additional litigation from claims by firemen and policemen pursuant to this legislation].' " *Bakelaar* v. *West Haven,* supra, 68, quoting *Plainville* v. *Travelers Indemnity Co.,* supra, 671–72; see *Grover* v. *Manchester,* 165 Conn. 615, 617–18, 353 A.2d 719 (1973); *Cuccuro* v. *West Haven,* 6 Conn. App. 265, 267, 505 A.2d 1 (1986); *Janco* v. *Fairfield,* 39 Conn. Sup. 403, 405, 466 A.2d 1, cert. denied, 199 Conn. 805, 508 A.2d 31 (1983). Section 7-433c, therefore, directs claimants to the provisions of the Workers' Compensation Act; General Statutes, tit. 31, c. 568; to determine how to proceed with a claim for compensation.

Section 31-294 states that "[n]o proceedings for compensation . . . shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident . . . ." That section also requires that a claimant's form of notice "state, *in simple language,* the date and place of the accident and the nature of the injury resulting therefrom . . . and the name and address of the employee and of the person in whose interest compensation is claimed." (Emphasis added.) Compliance with § 31-294 is essential to maintaining a claim for compensation under chapter 568 and therefore under § 7-433c because timely notice is a jurisdictional requirement that cannot be waived. *Cuccuro* v. *West Haven,* supra; *Janco* v. *Fairfield,* supra, 406; see also *Walsh* v. *Waldron & Sons,* 112 Conn. 579, 584, 153 A. 298 (1931).[5]

The plaintiff in the present case provided the city with written notification of his intent to seek compensation

---

[5] General Statutes § 31-294 sets out four exceptions where written notice of a claim is unnecessary. These exceptions are not applicable in the present appeal.

within weeks of his injury as required by § 31-294 and his form of notice contained all of the information required by that section. Indeed, the notice form he used was created by the workers' compensation commission to conform with provisions of § 31-294. Having complied with the procedures of the Workers' Compensation Act, the plaintiff simultaneously raised a § 7-433c claim, and accordingly the commissioner had jurisdiction to award him benefits under that section.

The city's argument that it was misled by the plaintiff's use of a workers' compensation notice form that contained language normally associated with such claims is without merit. No separate form of notice for § 7-433c liability exists, nor is such a form necessary, as the procedures for claims under that section and chapter 568 are the same. Further, as noted by the review division, the words "hypertension" and "heart disease" used by the plaintiff in his own description of his injury were sufficient to alert the city of a § 7-433c claim.

The city argues that even if the plaintiff was authorized to use the workers' compensation form, he should have explicitly stated on that form that he was proceeding under § 7-433c. Section 31-294, however, does not contain such a requirement. Rather, the statute, by providing that a claimant should state the nature of his injury in "simple language," suggests that the legislature intended the average lay person to be able to give notice of his claim without citing specific statutory provisions that would require substantial legal advice. The argument posed by the city would require otherwise. Moreover, the form of notice, created by the workers' compensation commission, tracking the language of § 31-294, did not require the plaintiff to provide such information.

Accordingly, since the plaintiff filed notice of his intent to seek compensation within one year of his heart attack, meeting all of the requirements of § 31-294, the commissioner had jurisdiction to award compensation under § 7-433c. Therefore, the review division did not err in upholding the commissioner's decision denying the city's motion to open and modify the award and in dismissing its appeal.

There is no error.

In this opinion the other justices concurred.