[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Acme Electro-Plating, Inc. (Acme), appeals from a decision of the defendant, Timothy R. E. Keeney, Commissioner of the Connecticut Department of Environmental Protection (Commissioner). The Commissioner denied plaintiff's application for a permit to discharge pretreated wastewater into Stamford's sewer treatment system. The Commissioner acted pursuant to General Statutes 22a-424(i) and 22a-430 and Regs., Conn. State Agencies 22a-430-4. Plaintiff appeals pursuant to General Statutes 22a-430(b), 22a-437 and 4-183. The court finds in favor of the defendant.
On May 17, 1988, Acme applied to the Water Compliance Unit of the Department of Environmental Protection "for renewal of [its] discharge permit." Acme's permit was issued on April 20, 1982 and in fact had expired about a year earlier on April 20, 1987. Acme sought the permit to discharge wastewater from its CT Page 6227-rr treatment system into Stamford's sewer treatment system. In its May, 1988 application, Acme described the nature of the business generating the discharge as "a job shop parts finishing company utilizing the following plating process lines: Silver, Copper, Nickel and Chromium plating."
The Department issued several notices prior to convening a hearing on the application. The hearing began on December 5, 1989 and concluded on October 12, 1990.
On March 17, 1992, Hearing Officer Cynthia Watts Elder issued a proposed decision recommending that Acme's application be denied. The parties presented oral argument regarding the proposed decision to the Commissioner on April 27, 1992. The Commissioner issued his final decision, amending the hearing officer's findings of fact and conclusions of law, on July 2, 1992. The Commissioner denied the permit application on the basis that Acme had been guilty of "chronic and serious noncompliance with its permit, with several orders, and with the statutes and regulations administered by the Commissioner . . . ." CT Page 6227-ss
By letter dated July 17, 1992, the Department staff made a "motion for reconsideration" to correct what it perceived to be an inconsistency in the Commissioner's decision. Acme objected to the Department's recommended revision and requested "a hearing to support and substantiate its objection." In his "Ruling on Staff's Motion for Reconsideration," also dated August 5, 1992, the Commissioner acknowledged the potential confusion and misinterpretation and accordingly deleted a paragraph from the final decision.
Acme appeals the Commissioner's final decision, as revised, claiming (1) that notice of the administrative hearing was inadequate; (2) that the Commissioner cannot deny a permit based on prior noncompliance alone and without a finding of adverse environmental impact; (3) that the Commissioner failed to consider Acme's status as a small business in contravention of state policy as reflected in 4-168a; and (4) that the Commissioner's ruling on reconsideration is invalid and a nullity because there was no authority for such a reconsideration prior to July 1, 1989. CT Page 6227-tt
The defendant moves to dismiss this appeal on grounds that plaintiff failed to plead and prove aggrievement. The court must consider and rule on this issue before addressing the merits of the plaintiff's appeal.
"Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the appeal." Bakelaar v. West Haven, 193 Conn. 59, 65 (1984). In its complaint, Acme states that it is "appealing decisions of the Commissioner . . ." and alleges, inter alia, that "the Commissioner rendered a Final Decision denying the plaintiff's application for [a discharge] permit . . . ." Acme also alleges that the Commissioner's decision and ruling on reconsideration are "arbitrary, capricious and incorrect" for various reasons.
While Acme never explicitly alleges that it is aggrieved by the Commissioner's decision, it has alleged facts which the court finds sufficient to constitute an allegation of aggrievement. Acme alleges, in effect, that it was denied a permit to which it was entitled under the law. Translating CT Page 6227-uu Acme's allegations into classical aggrievement language, Acme has alleged that it has a specific, personal and legal interest in the subject matter of the Commissioner's decision; that is, the permit in question, and that this legal interest has been specially and injuriously affected by the decision denying the permit. See Bakelaar v. West Haven, supra. [,] 65. Such a claim is sufficient to satisfy the pleading requirements concerning aggrievement. The court's finding in this regard is supported by the principle that the court should indulge every presumption in favor of its subject matter jurisdiction. Miko v. Commission on Human Rights 
Opportunities, 220 Conn. 192, 198 (1991).
As to proof of aggrievement, the record reflects that Acme sought a discharge permit under statutes which, if satisfied, require the Commissioner to issue one. The record also reflects that the Commissioner denied Acme's application for a permit. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations and internal quotation marks omitted.) Bakelaar v. West Haven, CT Page 6227-vv supra, 66.
This court finds plaintiff is aggrieved. Defendant's motion to dismiss is denied.
NOTICE
Acme argues that notice of the public hearing regarding its permit was inadequate because it either did not contain specific allegations of noncompliance or was not published at least thirty days prior to the public hearing as required by22a-430(b).
Section 22a-430(b) provides, in part:
 The Commissioner may hold a public hearing prior to approving or denying any application . . . . Notice of such hearing shall be published at least thirty days before the hearing in a newspaper having a substantial circulation in the area affected. CT Page 6227-ww
Section 4-177, prior to July 1, 1989, as applicable to this case provided in relevant part:
 (a) In a contested case, all parties shall be afforded an opportunity for nearing after reasonable notice. (b) The notice shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; (4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.
(Emphasis added.)
The Department issued several hearing notices in this case. CT Page 6227-xx Following the postponement of the hearing until December 5, 1989, the Department issued the second to the last hearing notice, dated November 2, 1989. This notice was published on November 4, 1989, more than thirty days before the December 5th hearing date, as required by 22a-430(b). The November 2, 1989 notice states, inter alia, the date, time and place of the hearing, the nature of the hearing, the statutory and regulatory sections pursuant to which the Department has authority to act, the Department's tentative conclusion to deny the permit "because of historical non-compliance with environmental statutes, regulations, orders and permits," and the statutory and regulatory sections which the Department identified as supportive of its decision to deny the permit. Therefore, this court concludes that the November 2, 1989 notice satisfied the requirements of 22a-430(b) and 4-177(b). Neither of these sections requires that detailed allegations of noncompliance be listed. See Levinson v. Board of Chiropractic Examiners,211 Conn. 508, 534 (1989) (discussing difference between notice required under 4-177(b)(4) and 4-182(c)). Furthermore, if plaintiff desired a more specific statement, it could have applied for a "more definite and detailed statement" under CT Page 6227-yy4-177(b). Id., 536.
The last notice issued by the department is undated but was delivered to plaintiff on November 20, 1989. This notice contains the same information concerning the hearing as the November 2, 1989 notice, but goes on to list nine specific allegaions [allegations] of noncompliance. It also states that it supercedes the first notice, dated April 13, 1989, which also listed allegations of noncompliance. This last notice was never published.
The court concludes that the language of the last notice can only be read to mean that it supercedes the first notice, not all subsequent notices. Thus, the fact that it was not published does not mean that the Department failed to give proper notice of the nearing. The November 2, 1989 notice, which was not superceded, satisfies all applicable notice requirements.
PRIOR NONCOMPLIANCE
Plaintiff argues that the denial of a permit cannot be CT Page 6227-zz based on a history of noncompliance alone but must be based on a finding that the discharge for which the permit is sought will have an adverse environmental impact. The court disagrees.
Section 22a-430(b) has always provided that if the Commissioner determines that a discharge would cause pollution to the waters of the state, he must deny the application for a discharge permit, and if he determines that a discharge would not cause pollution, he must issue a permit. However, in 1986, the legislature amended another statute, 22a-424, entitled "Powers and duties of commissioner," to allow the Commissioner when ruling on a permit application to consider prior violations by an applicant:
 The commissioner shall have the following powers and duties:
. . .
 (i) to issue, continue in effect, revoke, modify or deny permits, under such conditions as he may CT Page 6227-aaa prescribe, for the discharge of any water, substance or material into the waters of the state, or orders for or approval of the installation, modification or operation of pollution abatement facilities or monitoring systems. In taking any action pursuant to this subsection or subsection (f), (h) or (j), the commissioner may reasonably consider any prior violation by an applicant, permittee or recipient of an order, of any statute or regulation administered by the commissioner, or any order or permit issued by the commissioner;
. . .
See Conn. Pub. Acts No. 86-82 2 (Feb. Reg. Sess. 1986). (Emphasis added).
Reading 22a-430(b) and 22a-424(i) together, the court concludes that 22a-424(i) allows the Commissioner to deny a permit on the basis of an applicant's prior violations alone. Otherwise, consideration of those prior violations would be CT Page 6227-bbb superfluous and meaningless in the permit application process. A prior violation would be irrelevant if the Commissioner could only deny a permit upon a finding, under 22a-430(b), that the proposed discharge would cause pollution. "[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." 84 Century Limited Partnership v. Board of Tax Review. 207 Conn. 250, 263 (1988) (citation and internal quotation marks omitted). "A statute should be construed so that no word, phrase or clause will be rendered meaningless . . . ." Verrastro v. Sivertsen, 188 Conn. 213, 221
(1982) (citations and internal quotation marks omitted).
The only limit placed on the Commissioner with regard to an applicant's prior violations is that his consideration of them must be reasonable. General Statutes 22a-424(i). Plaintiff argues that the presence of the reasonableness standard in22a-424(i) means that the Commissioner is "limited by the criteria set forth in Section 22a-430" such that "denial can only be made when it is found that the discharge would cause CT Page 6227-ccc pollution . . ." Acme cites the legislative history of Public Act 86-2, which amended 22a-424(i), in support of this position.
However, the legislative history does not support plaintiff's claim. Introducing an amendment to the bill, Senator Benson stated:
 [R]elative to the Commissioner's ability to deny a permit based on previous violations, we are inserting the word `reasonably' so that there will be some constraints as to the Commissioner's discretion in terms of declination of a permit application.
. . .
 [I]n the granting of a permit, under this section, it also allows, in statute, something that the Commissioner is already undertaking, and the ability to decline a permit, based on previous violations of environmental statutes contained within this section. CT Page 6227-ddd
. . .
29 S. Proc., Pt. 3, 1986 Regular Sess., pp. 1011-12.
Testimony at the hearing before the committee on the environment, held almost two months before the Senate proceedings, was consistent with Senator Benson's statements. For example, Department Commissioner Pac stated:
COMM. PAC: The next provision in that same Bill relates to the prior history of an applicant. It would enable the Commissioner to take in to consideration the prior history of an applicant. If an applicant had a bad history, that would provide us with a basis to deny an application. If conversely, an applicant had a good record, in marginal situations we can't issue a permit knowing that the parties involved are responsible parties. That's imply it.
SEN. BENSON: Any further questions? CT Page 6227-eee
REP. BERTINUSON: Commissioner, do you have that authority as far as hazardous waste disposals in the —
COMM. PAC: Yes. We happen to have this grace in some specific applications. But it's uncertain that I have the authority to do. This makes it specific. You know, if you wind up in court situations, it's difficult then.
Conn. Joint Standing Committee Hearings, Environment, Pt. 1, 1986 Sess., p. 2.
The testimony of others focused on the claimed lack of guidelines concerning the type and severity of prior violations that may be considered by the Commissioner under the amendment to 22a-424(i). Id., 20-22, 30-31. These concerns presumably led to the insertion of the word "reasonably" in the bill, as explained by Senator Benson. See 29 S.Proc., Pt. 3, 1986 Regular Session, pp. 1011-12 (quoted above).
Thus, the legislative history supports the Commissioner's CT Page 6227-fff claim that prior violations may form the sole basis for denying a discharge permit. The requirement that the Commissioner "reasonably consider" prior violations simply indicates that the legislature did not want the Commissioner to have completely unfettered discretion such that any prior violation, no matter how minor, could be the sole basis for denial.
In the instant case, the Commissioner made extensive findings concerning Acme's prior noncompliance with administrative orders, statutory requirements, and permit terms. Acme does not challenge these findings, although it tries to characterize its noncompliance as "technical in nature," "not significant," "mere inadvertence," "commonplace with electroplaters," and having "no environmental impact." The actual history of violations, as found by the Commissioner, may be summarized as follows:
 1) Acme violated both Department Order 908, which was issued in 1971 and required installation of a treatment system; and violated a stipulated judgment in Pac v. Acme Electro-Plating, Inc., CV81-0256365-S, CT Page 6227-ggg brought to enforce Order 908.
 2) Acme violated Department Order WC 3682, issued in 1984, which found that Acme had created a source of pollution and required Acme to determine the degree and extent of contamination and to take remedial action. A stipulated judgment was entered in 1987, and Acme was required to pay $28,000 for its "failure to comply with the terms of Order No. 3682."
 3) Acme violated Department Order WC 4712, issued in 1988, which found that Acme had created a source of pollution and required modification of its treatment facilities and implementation of rinse water conservation practices.
 4) Acme violated Department Order HM-75, issued in 1983, which found that Acme had violated hazardous waste regulations and directed Acme to identify all hazardous wastes and take all necessary remedial measures. Acme also violated the terms of a stipulated judgment in CT Page 6227-hhh Pac v. Acme Electro-Plating, Inc., CV-86-0313959-S, an action brought to enforce Order HM-75.
 5) Acme failed to file an application to renew its expired permit and, thus, was admittedly discharging material without a permit in violation of 22a-430. In 1989, a stipulated judgment was entered in Carothers v. Acme Electro-Plating, Inc., CV 88-0341749-S, imposing a civil penalty and requiring the submission of the instant permit application.
 6) Acme failed in a variety of ways to maintain and operate the facility in good working order in violation of its previously issued permit. Said failure continued after the expiration of that permit, limited Acme's ability to determine whether the system was working effectively, and caused malfunctioning to the point where metals in the effluent repeatedly exceeded permitted levels.
 7) Acme failed to submit monthly discharge monitoring reports (DMRs), and when DMRs were submitted, they CT Page 6227-iii showed repeated and consistent violations of permit limitations. Acme continued to exceed these effluent limitations after the expiration of its permit.
 8) Acme failed to monitor its wastewater in accordance with its permit requirements by failing to use the composite sample method.
 9) Acme bypassed its approved treatment facilities and directly discharged untreated wastewater into the sewer system, both in violation of its permit and after the expiration of that permit in violation of 22a-430. Acme entered guilty pleas for the violations which occurred while the permit was in effect and was convicted and fined $15,000.
Despite Acme's attempts to minimize and rationalize its prior violations, this court finds that the Commissioner's consideration of those violations in accordance with22a-424(i) was entirely reasonable. Plaintiff argues that the issuance of a new permit is sufficient to ensure the protection CT Page 6227-jjj of the waters of the state. This argument is seriously undermined, however, by Acme's long, dismal history of noncompliance with the conditions of its previous permit. Under these circumstances, it was not unreasonable for the Commissioner to conclude that issuance of a new permit to Acme would not protect the state's waters.
The court finds that the Commissioner did not err in denying Acme's permit application on the basis of its history of noncompliance.
ACME'S STATUS AS A SMALL BUSINESS
Acme argues that the Commissioner failed to consider its status as a small business in contravention of the state policy which is expressed in General Statutes 4-168a(b). Acme asserts that the denial of a discharge permit will force Acme out of business and, thus, will have disastrous consequences on Acme, its employees and the public's interest in adequate competition in the electroplating business.
Section 4-168a(b) provides, inter alia: CT Page 6227-kkk
 (b) Prior to the adoption of any proposed regulation on and after October 1, 1987, each agency shall, where consistent with public health, safety and welfare, consider utilizing regulatory methods that will accomplish the objectives of applicable statutes while minimizing adverse impact on small businesses. The agency shall consider, without limitation, each of the following methods of reducing the impact of the proposed regulation on small businesses: . . . .
Clearly, 4-168a requires an agency to consider certain factors "[p]rior to the adoption of any proposed regulation." It does not, however, require the Commissioner to consider such factors in acting on an application for a discharge permit in a case such as this. Furthermore, plaintiff has not identified any Department regulations that it claims were adopted in violation of the mandates of 4-168a(b).
The plaintiff's reliance on 4-168a(b) is misplaced, and its argument in that regard may not be sustained. CT Page 6227-lll
MOTION FOR RECONSIDERATION
Acme claims that because 4-181a was not in effect prior to July 1, 1989, when the agency proceedings commenced, there was no authority for the Commissioner's reconsideration of the final decision. Acme asserts that the ruling on reconsideration is invalid and a nullity.
The Department staff moved for "reconsideration" of the final decision pursuant to Regs., Conn. State Agencies22a-3a-6(z). The Department recommended a revision to correct what it perceived to be an inconsistency in the decision. On page five of the final decision, the Commissioner had originally stated: "Thus, the Applicant was lawfully allowed to continue the discharge without a permit pending disposition of this application." (Emphasis added). On page twenty-one, the Commissioner stated: "While even the treated (or partially treated) discharge from the facility's treatment system after April 20, 1987 was unpermitted and therefore illegal, a discharge of untreated waste is particularly serious because of CT Page 6227-mmm its potential environmental impact." (Emphasis added). The Department agreed with the latter statement, emphasizing that discharging without a permit was never lawful. It feared that the statement on page five might be used as a defense in subsequent enforcement proceedings of the statutory permit requirement.
In his "Ruling on Staff's Motion for Reconsideration," the Commissioner explained:
 . . . In that paragraph [on page five] I stated that the Applicant suffered no prejudice from postponement of the hearing because the postponement did not interfere with the Applicant's continuing operations. Referring to a stipulated judgment previously entered in a lawsuit in which the Department had alleged, and the Applicant had admitted, that the Applicant was illegally discharging without a 22a-430 permit, I noted that under the terms of that judgment the Applicant was "lawfully allowed" to maintain the discharge pending disposition of this application.
. . . CT Page 6227-nnn
 It should be clear from the context that I am not suggesting that the Applicant's unpermitted discharge has been legal. However, to the extent that the paragraph beginning on page 5 could possibly be deemed to imply otherwise, it is hereby deleted from the Final Decision.
Regardless of whether the Commissioner had authority to revise his final decision in response to his own staff's motion for reconsideration, the plaintiff has made no claim or showing that it was prejudiced in any way by the revision. The paragraph beginning on page five of the final decision, which the Commissioner deleted, did not address the issue of whether Acme's discharge without a permit was legal or not. Rather, it concerned whether Acme suffered prejudice due to alleged ex parte communications between the hearing officer and counsel for the Department staff over the postponement of the hearing. In referring to the stipulated judgment, the Commissioner was not making a finding for purposes of these proceedings that Acme's discharge without a permit was legal. Thus, the Commissioner did not delete a finding, favorable to Acme, concerning the legality CT Page 6227-ooo of its discharge. The revision was simply in response to some collateral concerns of the Department staff, and it had no effect on the Commissioner's findings and conclusions in the final decision. In order for the court to reverse or modify the Commissioner's decision, "substantial rights of the appellant [must] have been prejudiced . . . ." General Statutes 4-183(g) (Rev. to 1987). The court concludes that plaintiff suffered no prejudice from the Commissioner's "reconsideration" and, therefore, it affords no basis for sustaining its appeal.
The appeal is dismissed.
Maloney, J.