[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appeals from a decision of the defendant Inland Wetlands Commission (commission) denying its application for a wetlands permit. The commission is an inland wetlands agency acting under the authority of General Statutes § 22a-42. The appeal is brought pursuant to General Statutes §§ 22a-43 and 8-8. The plaintiff limited liability corporation filed an application with the commission with respect to construction activities related to a proposed residential affordable housing complex. The individual defendants are the chairman and secretary of the commission and the town clerk. The defendant commissioner of department of environmental protection was not a party to the underlying proceeding but was served with this appeal pursuant to General Statutes § 22a-43(a). For the reasons stated below, the court finds the issues in favor of the defendants. CT Page 4670
This appeal arises from the following facts supported by the record. By application dated May 7, 1998, the plaintiff requested a wetlands permit regarding the construction of five residential buildings with associated drives, parking and utilities on a 3.76 acre parcel in the town of New Milford. (Return of Record (ROR) Exh. A). The commission met to discuss the application at seven different meetings[1]. The plaintiff provided opinions from two experts, R.G. Slayback and Russell Posthauer. The commission retained an engineer, James MacBroom, who issued an opinion citing problems with the plaintiff's plan for a subsurface system to control the runoff to the existing drainage system. The plaintiff's experts responded to MacBroom's concerns by letter and at a commission meeting. On August 13, 1998, the commission issued a draft resolution to deny the application; plaintiff's counsel had an opportunity to respond. (ROR, Exhs. S, X). Ultimately, it denied the application on September 10, 1998. (ROR, Exh. Z). The appeal followed on October 8, 1998.
In December 1998, the commission filed its answer and the return of record; the defendant commissioner filed his answer. The court granted the plaintiff's motion to supplement the record on February 12, 1999. The plaintiff filed its brief on February 2, 1999; the commissioner filed his brief on February 5, 1999, and the commission filed its brief on March 5, 1999. The court heard testimony on the issue of aggrievement on March 8, 1999, and the parties rested on their briefs for legal argument.
Before turning to the issues on appeal, the court must address the question of aggrievement. East Side Civic Assn. v.Planning and Zoning Commissioner, 161 Conn. 558, 559 (1971); ParkCity Hospital v. CHRO, 14 Conn. App. 413, 417 (1988), aff'd,210 Conn. 697 (1989). Under General Statutes § 22a-43, a person aggrieved by an order of the commission may appeal from that order. As noted most recently by our Supreme Court in Med-Transof Conn., Inc. v. Dept of Public Health Addiction Services,242 Conn. 152, 158-59 (1997), the test for determining aggrievement is twofold:
First, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific CT Page 4671 personal and legal interest has been specially and injuriously affected by the decision. . . . Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47, 478 A.2d 601
(1984); Bakelaar v. West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1984).
In Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,530 (1987), the Supreme Court held that an owner of the subject property met the two requirements to find aggrievement. The court here heard testimony from the plaintiff's managing member, Peter J. Murray, and received evidence of a deed for the subject property and the certificate of good standing for the plaintiff. The court finds that the plaintiff is the owner of the property and is aggrieved by the order of the commission denying its application.
The plaintiff's claim on appeal is that the findings underlying the commission's decision are not supported by substantial evidence in the record. This claim must be considered in light of the applicable law as to this court's limited scope of review.
In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . CT Page 4672
(Internal citations omitted; internal quotations omitted) Samperiv. Inland Wetlands Agency, 226 Conn. 579, 587-88 (1993). In other words, this court cannot substitute its judgment for that of the commission where the record contains substantial evidence to support the commission's decision and where the appropriate procedures were followed. Here, there is no claim of improper procedures or lack of procedural due process. Accordingly, the appeal rests upon the claim of whether the record contains substantial evidence to support the commission's decision to deny the plaintiff's application.
While the plaintiff specifically attacks each of the findings of the commission, throughout its brief it stresses the fact that there are no wetlands or watercourses on the subject property as if to suggest that this weakens the commission's authority over this matter. Under the statutory scheme to preserve the wetlands, the commission is authorized to effectuate and carry out that purpose through regulation of activities affecting the wetlands and watercourses within the town of New Milford. See General Statutes §§ 22a-28, 22a-42. General Statutes § 22a-38(13) defines "regulated activity" as any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, . . ."
It is not disputed by the plaintiff that the activity of concern to the commission is the surface water drainage from the property into existing drainage channels on adjacent property. Those drainage channels are watercourses, and the drainage from the subject property is certainly "a use of a watercourse." The Supreme Court has found that such use can occur outside the watercourse and still be considered regulated activity. Aaron v.Conservation Commission, 183 Conn. 532, 542 (1981). Accordingly, the activity in question here is regulated activity as defined in the statute and is within the jurisdiction of the commission.
In compliance with the Inland Wetlands and Watercourses regulations for the town of New Milford, the commission entered various findings in support of its denial. § 9.2(a)-(g). The factors set forth in those regulations are also set forth in General Statutes § 22a-41. The commissions findings were as follows:
The Commission finds that the project is anticipated to cause CT Page 4673 environmental impacts to wetlands and watercourses and adds further risk to the safety and quality of life for this community from water borne erosion an flows. This project will impact wetlands, watercourses, wildlife habitat, vegetative habitat, water quality and health of the community. The degradation of the wetlands and watercourses is against the basis fundamentals of the laws governing wetlands, watercourses, and the protection and preservation of these environmentally sensitive ecological systems.
 The receiving waters for the proposed project, in it existing condition, is unstable and eroding. Construction activities in the watershed prior to wetland regulation have increased flows to the watercourse and created an unstable and eroding condition. During the review period of this project it was noted on record that the watercourse impacted Grove Street (a major connector road) during two storm events and required the Town to send emergency crews to keep the road passable. The Commission finds that further development within this watershed can only exacerbate this unacceptable watercourse erosion and flow problem that exists today.
 The Applicant has indicated that they will accept as a condition of approval that the stormwater abatement project associated with the development of a neighboring subdivision be completed prior to construction of their project. The Applicant further notes that in the event the down slope drainage improvement project is not completed their project will not proceed. During discussion of this issue the Chair of the Commission stated that the applicant should proceed with negotiations with the neighboring property owner. To this date negotiations have not occurred. Legal council for the Commission has indicated that basing a permit on a third parties performance of a public improvement project could lead to legal problems and thus does not recommend the Commission base its approval upon activities not within the control of the Applicant.
(ROR, Ex. Z).
The plaintiff argues that there is no substantial evidence to support this finding primarily because it offered to agree to condition on the permit based on the completion of a storm water abatement drainage facility by an adjacent property owner. The plaintiff has not provided the court with any authority to CT Page 4674 support this argument. The commission did not act arbitrarily, illegally or in abuse of its discretion by refusing to base its approval on this condition.
The commission further found:
Potential environmental impacts of the proposal.
 The Commission finds that impacts to the wetlands, watercourses, wildlife habitat, vegetative habitat, water quality and the health of the community are anticipated with implementation of this project. In particular the Commission finds that the project as proposed will increase the volume of runoff from the project thus exacerbating a known erosion problem along the steep hillside watercourse to which the project is proposed to discharge its stormwater. The Commission finds that any increase in runoff to the hillside watercourse will further erode the hillside, degrade the water quality of receiving streams and exacerbate further the public health and safety with regards to drainage and the flooding of Grove Street.
 Relationship between short term uses of environment and long term productivity.
The Commission finds that there will be irreversible erosion and pollution to the wetland and watercourse systems by the implementation of this project. Long term damages will occur from the continued increase in volume of storm water runoff from the project in perpetuity. Short term impacts of erosion, siltation and water quality degradation coupled with the continued long term pollution and erosion forecloses future water quality improvement, will degrade the quality of wetlands and watercourses on and adjacent to the property and increase risks to the general health and safety of community down slope of the project. James MacBroom, Consulting Engineer, states "The detention system will control peak flow rates, but an increase in volume will occur." He further states, "Under natural conditions, about half of the total precipitation is returned to the atmosphere via evaporation and transpiration. The reduction in vegetative cover and increase in impervious cover followed by soil infiltration reduces the site's evaporation and transpiration, thereby altering surface and groundwater runoff." The Commission finds that the development of this project will have short CT Page 4675 and long term negative impacts to the wetlands and watercourses.
Irreversible and Irretrievable Commitments of Resources.
 The Commission finds that the applicant has demonstrated that the construction of the project will alter the groundwater and stream flows that currently exist. The Commission finds that this project will cause the wetlands and watercourses to be further eroded and taxed by the stormwater runoff from the project.
 The character and degree of injury to, or interference with safety, health, or the reasonable use of the property.
 The Commission finds that the project proposes to discharge an increased volume of stormwater to the wetlands and watercourses. Additional erosion and degradation of the water quality resulting from additional stormwater discharge will impact the existing watercouse via erosion and water quality degradation, present future safety concerns for the Town's infrastructure along Grove Street and may directly injure the existing flora and fauna of the wetland systems.
(ROR, Ex. Z).
In attacking this finding, the plaintiff argues that its engineers Posthauer and Slayback opined that there would be no adverse impact and in fact a modest improvement of the erosion potential. The commission's expert, however, concluded:
 In summary, the application has a high percentage of the site covered with impervious surfaces upgradient of an eroding watercourse. The project includes an extensive system of infiltration and detention galleries that control the peak rate of runoff. There will be a reduction in evapotranspiration, and an increase in the volume of surface and/or groundwater runoff. The mitigation program is dependent upon a subsurface system that is difficult to monitor and maintain.
(ROR, Ex. N).
Thus, there is evidence in the record to support this finding. "The reviewing court must take into account [that there CT Page 4676 is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." Samperi v. Inland WetlandsAgency, supra, 226 Conn. 588 (1993). Further,
 "We have said that an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair.
Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 542 (1987).
Finally, the plaintiff attacks the commission finding as to the availability of prudent and feasible alternatives. That finding reads,
Prudential Feasible Alternatives
 The Commission finds that prudent and feasible alternatives are available that may have less impact to the wetland and watercourses on and adjacent to the property. James MacBroom notes in his report that "further mitigation [of the project presented] would generally require a site plan with less impervious cover, more vegetation and maintainable surface stormwater management systems, or a drain to a stable outfall." The following are types of alternatives to the proposed project that are suggested by the Commission; reduction in the impervious cover of the property, reducing the amount of natural vegetation lost due to construction and designing the property in conformance to current zoning requirements. These options could significantly reduce the amount of runoff from the project, thus reduce the impacts to wetlands and watercourse systems on the property.
(ROR, Ex Z).
Under G.S. § 22a-41(b)(2),
(2) In the case of an application which is denied on the basis of a finding that there may be feasible and prudent alternatives to the proposed regulated activity which have less adverse impact on wetlands or watercourses, the commissioner or the inland wetlands agency, as the case may CT Page 4677 be, shall propose on the record in writing the types of alternatives which the applicant may investigate provided this subdivision shall not be construed to shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity.
The commission has set forth the alternatives for the plaintiff to investigate in compliance with this statutory subdivision. The plaintiff argues that the commission's alternatives are not consistent with the goals and benefits of the plaintiff's activities. There is nothing in the record to show that the alternatives suggested by the commission would be economically unreasonable in light of the social benefits derived from the activity or that they were not sound engineering.Samperi v. Inland Wetlands Agency, supra, 226 Conn. 594-95. The commission made this finding pursuant to General Statutes §22a-41(2); the plaintiff has failed to meet its burden to overturn it.
 This court cannot substitute its judgment for that of the commission.
 We have consistently held that de novo review is inappropriate for review of the factual findings of administrative agencies. DeBeradinis v. Zoning Commission, 228 Conn. 187, 199, 635 A.2d 1220 (1993); Samperi v. Inland Wetlands Agency, supra 587; Calandra v. Zoning Commission, 176 Conn. 439, 440, 408 A.2d 229 (1979).
Adriani v. Commission on Human Rights Opportunities,228 Conn. 545, 551 (1994). The findings of the commission underlying its denial of the application for a wetlands permit are supported by substantial evidence in the record.
Accordingly, the appeal is dismissed.
DIPENTIMA, J.