[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED JUNE 28, 1996
The defendant has filed a motion for summary judgment. The motion seeks summary judgment as to counts one (strict liability), two (negligence), three (negligent infliction of emotional distress), four (negligence per se), and six (negligent misrepresentation) of plaintiffs revised complaint on the grounds that the claims are barred by the Connecticut Workers' Compensation Act, General Statutes Section 31-275, et seq.
This action arises from the plaintiff, Donald Koscak's [Koscak] allegation of mercury exposure and poisoning during the course of his employment at defendant's, Mott Metallurgical Corporation [Mott], facility. Revised Complaint dated August 5, 1994. In July 1993, Koscak was hired by The Agentry [Agentry], a temporary job placement agency in the state of Connecticut. See Plaintiff's Supplemental Memorandum dated April 1, 1996 [Plaintiff's Supplemental Memorandum], Koscak's Affidavit dated October 3, 1995, attached as Exhibit C [Koscak Affidavit], para. 4. Agentry and Mott contracted for the services of Koscak. Plaintiff's Supplemental Memorandum, Additional Terms and Conditions, attached as Exhibit D [Terms and Conditions]. In July of 1993, Agentry sent Koscak to fill Mott's need for a stock room clerk where he remained employed until October 1993. Koscak Affidavit, para. 6.
Under the Agentry/Mott contract, Agentry was obligated to pay Koscak, withhold taxes, remit taxes to appropriate authorities and check references. Plaintiff's Supplemental Memorandum, Defendant's Answers to Plaintiff's First Set of Interrogatories dated August 11, 1995, attached as Exhibit E [Defendant's Answers], Answer 11(a). Mott's obligations were to pay Agentry for Koscak's wages plus a fee for Agentry's service. Defendant's Answers, Answer 11(b). In addition. Mott must "discuss all matters concerning [Agentry personnel's] employment, job assignments, pay procedures, etc. with The Agentry." Terms and Conditions. And, if Mott wanted to hire Koscak permanently within 90 days of the week-ending date on the time slip, Agentry's approval would be necessary; and, if not sought, Agentry was entitled to a transfer service fee. Terms and Conditions. CT Page 4824
Koscak's obligations to Agentry under his employment contract were to contact the agency if he was sick, late or had any problems with his assignment. Plaintiffs Supplemental Memorandum, Koscak Supplemental Affidavit dated March 28, 1996, attached as Exhibit B [Koscak Supplemental Affidavit], para. 4. In addition, Koscak was to provide his weekly time slip to Agentry for compensation. Id. at para. 6. Lastly, Koscak was required to obtain Agentry's permission before he discussed permanent employment with a client. Plaintiff's Supplemental Memorandum, Agentry Employment Application dated July 19, 1993, attached as Exhibit A [Employment Application].
Koscak's obligation to Mott was to perform the duties required of a stock room clerk. Defendant's Answers, Answer 11(c). His performance was to take place at Mott's facility and under the direction of the Mott supervisor. Id.
Under the employment contract, Agentry had the right to terminate Koscak at any time either from Mott's facility and/or from Agentry's employ. Employment Application; Koscak Affidavit, paras. 8 9. Likewise, Koscak had the right under this agreement to the benefit of workers' compensation if he were injured in the course of his employment. Koscak Supplemental Affidavit, para. 10.
While working at Mott's facility, Koscak allegedly became ill from exposure to hazardous materials. Koscak Affidavit, para. 11. Koscak made a workers' compensation claim to Agentry and his bills were paid accordingly. Koscak Supplemental Affidavit, para. 10. Mott also paid medical bills for Koscak's injuries. Koscak Affidavit, paras. 13 14; Summary Judgment Memorandum dated September 7, 1995, medical payment history, attached as Exhibit B.
On the basis of Agentry's employer/employee relationship with Koscak and the alleged nonexistence of such a relationship with Mott, Koscak claims his negligence action is appropriately brought against Mott.
STANDARD OF REVIEW
Koscak filed a seven-count revised complaint on August 5, 1994 alleging that: CT Page 4825
 (1) Mott is strictly liable for Koscak's injuries because its use of mercury was an ultrahazardous activity; (2) Mott negligently failed to inspect, safeguard or maintain its facility, thus causing Koscak to suffer mercurial poisoning; (3) Mott negligently failed to prevent excessive mercury exposure thus creating an unreasonable risk of causing Koscak emotional distress; (4) Mott's negligent failure to warn Koscak of the potential exposure to mercury is negligence per se in that Mott violated Conn. Gen. Stat. Sec. 31-401; (5) Mott fraudulently concealed from the plaintiff relevant information regarding the potential exposure to mercury; (6) Mott's negligent misrepresentation to Koscak about his potential exposure to mercury; and (7) Mott's decision not to inform the plaintiff of the plant's contamination was a willful, wanton or reckless act amounting to an intentional infliction of emotional distress.
On September 8, 1995, the defendant filed a motion for summary judgment as to counts one, two, three, four and six of plaintiff's revised complaint along with a supporting memorandum, an affidavit of Patricia Pare — the supervisor of traffic/stock room at Mott, Mott's payment history of Koscak's medical bills, and supporting case law. On October 5, 1995, Koscak filed a memorandum in opposition to Mott's motion; attached was Koscak's affidavit, Additional Terms and Conditions section of Koscak's weekly time slip, Mott's records concerning Koscak, defendant's answers to plaintiff's first set of interrogatories, and supporting case law. On March 6, 1996, Mott filed a reply to plaintiffs opposition. On April 1, 1996, Koscak filed a supplemental memorandum; attached was Koscak's application with Agentry, Koscak's supplemental affidavit, case law and the attachments previously submitted in his original opposition. On April 8, 1996, defendant filed a supplemental memorandum; attached was the affidavit of Kenneth Buratti — President of Agentry.
Connecticut Practice Book Section 384 provides that summary judgment, "shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarez v. DickmontPlastics Corp., 229 Conn. 99, 105 (1994). "The test is whether a party would be entitled to a directed verdict on the same facts." CT Page 4826Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982). "[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." Union Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380, 260 A.2d 596
(1969).
WORKERS' COMPENSATION ACT[1]
The purpose behind the Workers' Compensation Act is to compensate an employee for injuries arising out of and in the course of employment, regardless of fault, by imposing a form of strict liability upon the employer. See Crochiere v. Board ofEducation, 227 Conn. 333, 349 (1993); Collins v. West Haven,210 Conn. 423, 425, 555 A.2d 981 (1989). The legislation is remedial in nature and should be broadly construed to accomplish its purpose. Dubois v. General Dynamics Corp., 222 Conn. 67 (1992);Misenti v. International Silver Co., 215 Conn. 206, 210,575 A.2d 690 (1990).
An "employee" is defined under the Act as "any person who has entered into or works under any contract of service or apprenticeship with an employer . . ." General Statutes Section31-275 (9)(A)(i) (Cum. Sup. 1996). An employer-employee relationship is a condition precedent to the right to claim workers' compensation benefits and implicates subject matter jurisdiction. Vanzant v. Hall, 219 Conn. 674, 678, 594 A.2d 967
(1991). Coverage under the act must arise from a contract of employment, either express or implied. Kinney v. State, 213 Conn. 54,59, 566 A.2d 670 (1989), cert. denied, 111 S.C. 251 (1989).
BORROWED/LENT EMPLOYEE
Koscak alleges that he at all times was solely the employee of Agentry and relies upon General Statutes Section 31-292 to support his position. That section provides: "When the services of a worker are temporarily lent or let on hire to another person by the person with whom the worker has entered into a contract of service, the latter shall, for the purpose of this chapter, be deemed to continue to be the employer of such worker while he is so lent or hired by another." General Statutes Section 31-292
(Cum. Sup. 1996). "Lend" is defined as:
To give or put out for hire or compensation. To CT Page 4827 part with a thing of value to another for a fixed time or indefinite, yet to have some time in ending, to be used or enjoyed by that other; the thing itself or the equivalent of it to be given back at the time fixed, or when lawfully asked for, with or without compensation for the use as may be agreed upon.
Black's Law Dictionary 811 (5th ed. 1979). See also Marc Minuitv. PDF Construction Co., No. 1551, CRB-3-92-11, 1994 WL 551479, at *2 (Conn. Work. Comp. Comm. Oct. 7, 1994); Daly v. AmalgamatedTransit Union, No. 855, CRD-1-89-4, 1990 WL 142872, at *2 (Conn. Work. Comp. Comm. Aug. 20, 1990).
Koscak alleges that the lending employer, Agentry, is the only employer and therefore the temporary employer, Mott, is not insulated from civil liability. Koscak relies upon Lucarelli v.Earle C. Dodds, Inc., to support his position. 121 Conn. 540
(1936). In Lucarelli plaintiff while working on the premises of his employer, defendant Dodds, Inc., was asked by defendant to load stone onto a freight car for a buyer. Id at 642. Defendant agreed to have his men assist buyer in loading the stone. Id.
Because of his experience, defendant selected plaintiff to use the derrick to help buyer — the derrick broke killing plaintiff. Id. Defendant alleged that plaintiff was the employee of buyer at the time of the accident. Id. The court held that in accordance with the statute, where an employer has temporarily lent the services of his employee to another, the lending employer remains liable for compensation. Id. at 643.
The facts of Lucarelli are distinguished from this case by the terms and circumstances of the Agentry/Mott agreement. InLucarelli the employee was in the regular employ of the defendant and the defendant, in an effort to assist a client, offered to provide an extra hand loading the client's goods. The employee's relationship with the client was clearly limited to this one-time event which occurred on the defendant's premises.
In this case, Koscak's work was intended to be performed on Mott's premises and subject to Mott's direction and supervision. In addition, there are no facts to suggest that Agentry and Mott only intended for Koscak to work for a limited period of time, as was the case in Lucarelli. The definition of `lend' allows for an indefinite time period, but, there must still be some intention to have an ending time, i.e., the loan must not be permanent and there must be an intention to return the employee. CT Page 4828
There is no dispute that Koscak never became a permanent employee. It is also clear that Koscak was to perform his duties similar to that of a Mott general employee until the parties terminated the relationship.
Koscak claims that the written agreement between Agentry and Mott acknowledges Agentry's employer/employee relationship, that Koscak is a temporary employee, and that Agentry's approval was needed before Koscak could become a permanent employee. Plaintiffs Supplemental Memorandum, Terms and Conditions 
Employment Application. Therefore, Koscak alleges that this contract supports a finding of the temporary nature of the Koscak/Mott relationship.
Mott argues that Agentry wanted Koscak to become a permanent employee. Further, Mott claims that at the time Mott and Agentry entered into their written contract they also had a verbal agreement that at Mott and Koscak's discretion, Koscak would become a permanent employee. Mott supports its claim with an affidavit of Kenneth Buratti, president of Agentry, which unequivocally indicates that he wanted Koscak's relationship with Mott to become permanent and he recused himself from the decision-making process. Defendant's Supplemental Memorandum dated April 8, 1996, attached as Exhibit A. paras. 7-12.
There is no material dispute as to the intention of the parties at the time of the contract. Clearly, Agentry did not want Koscak back in its employ if Mott would have him; therefore, there was no intention to receive him back at a time period in the future. Section 31-292 is not applicable under these facts.
PRINCIPAL EMPLOYER
The premise of Mott's motion for summary judgment is that it is the principal employer of Koscak and therefore shielded from civil liability.[2]
The elements of the principal employer test are: (1) the relation of the principal employer and the subcontractor must exist in the work done wholly or in part for the principal employer; (2) the work must be on or about the premises controlled by the principal employer: and (3) the work must be a part or process in the trade or business of the principal employer. Ginda v. Northeast Utilities, Superior Court, judicial CT Page 4829 district of Hartford-New Britain at New Britain, Docket No. CV 90-0438223S, 3 CONN. L. RPTR. 309 (March 6, 1991) (Aronson, J.) (quoting Pacileo v. Morganti Inc., 10 Conn. App. 261, 263 (1987)).
Similar to the present case, Ginda involved a temporary employee placed at the defendant's premises by a temporary agency and while so employed the employee was injured. Ginda v.Northeast Utilities, supra. The defendant moved for summary judgment claiming the principal employer exclusion. The Ginda
court applied the principal employer test and determined that the defendant was the principal employer because the work done was wholly for the defendant's business; the work took place at defendant's facility: and that the work done was one of those tasks required to carry out the defendant's business. Ginda v.Northeast Utilities, supra. The court granted summary judgment.
Applying the principal employer test to this case, the FIRST element is clearly met because Koscak was employed in part for the benefit of Mott, i.e. maintaining the functioning of its stock room. Also, there is no dispute as to the second element. The work was done exclusively on Mott's premises and it was understood by the parties that such would be the case. Plaintiffs Supplemental Memorandum, Employment Application.
Lastly, with regard to the third element, "an activity is `part or process' in the business of the principal employer [if] it is one of those tasks which is required to carry out the principal employer's business." Ginda v. Northeast Utilities,supra (citing Pacileo v. Morganti, Inc., 10 Conn. App. 261, 263
(1987)). Work "of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees on the prosecution of his business . . . is a part or process in his business." Kasowitz v. Mutual Construction Co.,154 Conn. 607, 613 (1967) (quoting Crisanti v. Cremo Brewing Co.,136 Conn. 529, 532 (1950)).
There is no dispute that Koscak was doing work similar to that of Mott's regular employees and in a similar manner. Plaintiff s Supplemental Memorandum, p. 19. Koscak indicates that he was differentiated from the regular employees because he was not placed on the regular payroll, did not receive benefits and was excluded from employee activities. Koscak Affidavit, para. 10. None of these exclusions, however, effect a `part or process' of the functioning of Mott's business and in that regard, Koscak's work satisfies the third element. Therefore, all three CT Page 4830 elements of the principal employer test are met.
Furthermore, Koscak contends that Mott cannot be shielded by the exclusion because it did not pay him workers' compensation benefits. Koscak alleges that Mott's offer to pay some of his medical bills was out of generosity and that he was unaware of it being intended as workers' compensation. Koscak Affidavit, para.12-16. Koscak also supports his position via Mott's employment records. Plaintiffs Supplemental Memorandum, Mott's records, attached as Exhibit E. The record indicates that pursuant to an agreement with personnel at Mott, it was understood that Mott intended to have Agentry pay Koscak's compensation benefits. Id.
In addition, Koscak alleges that Mott paid at a subsequent time to protect itself from civil liability. Mott argues that it had a statutory obligation to pay Koscak's benefits under General Statutes Section 31-291 and that it acted in accordance therewith.
The facts do not support Koscak's theory of Mott's ill-motive in paying his medical bills. Mott began paying Koscak's bills through workers' compensation within one month after Koscak left its employ due to his illness. Summary Judgment Memorandum dated September 7, 1995, medical payment history, attached as Exhibit B. Koscak's knowledge of the source of Mott's payments is not a requirement and he cites no authority to the contrary. Therefore, Koscak is barred by the principal employer exclusion. Accordingly, the defendant's motion for summary judgment is granted.
HENNESSEY, J.