CITY OF WEST HAVEN, Appellant,

v.

COMMERCIAL UNION INSURANCE COMPANY f/k/a Employers Commercial Union Insurance Company, Appellee.

No. 41, Docket 89–7355.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1989.

Decided Jan. 18, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc March 20, 1990.

Keith Bradoc Gallant, New Haven, Conn. (Edward Gallant, Gallant & Gallant, New Haven, Conn. Louis Smith Votto, Corp. Counsel, City of West Haven, Conn., of counsel), for appellant.

Elizabeth A. Gallagher, New Haven, Conn. (William F. Gallagher, Gallagher, Gallagher & Calistro, New Haven, Conn., Robert J. Gillooly, Dennis W. Gillooly, Gillooly, McGrail, Carroll & Sheedy, New Haven, Conn., of counsel), for appellee.

Before OAKES, Chief Judge, KEARSE and ALTIMARI, Circuit Judges.

OAKES, Chief Judge:

On February 9, 1987, the City of West Haven, Connecticut ("West Haven"), filed suit against the Commercial Union Insurance Company ("Commercial Union") alleging several causes of action relating to Commercial Union's failure to defend and indemnify West Haven for disability claims and awards made to three police officers for heart-related illnesses. On March 30, 1989, the United States District Court for the District of Connecticut, T.F. Gilroy Daly, Judge, granted summary judgment for Commercial Union on statute-of-limitations grounds.

From July 1, 1972, to July 1, 1975, Commercial Union insured West Haven under a "Workmen's Compensation and Employers' Liability Policy." Under the policy, Commercial Union was obligated in three ways: (1) to pay benefits "required of the insured by the workmen's compensation law"; (2) to pay any damages West Haven became legally obligated to pay by reason of accident or disease to an employee arising in the course of employment; and (3) to defend West Haven in any proceedings or suits brought against it within the policy coverage.[1]

In Connecticut, police officers and firefighters disabled from working as a result of hypertension or heart disease may proceed along one of two avenues in seeking disability benefits. They may recover benefits under the general Workers' Compensation Act, Conn.Gen.Stat. §§ 31–275 to –355a (1989), or under a separate, special compensation program for police officers and firefighters with hypertension or heart disease. See Conn.Gen.Stat. § 7–433c (1989). In recognition of the stress placed upon police officers and firefighters, section 7–433c guarantees benefits equivalent to workers' compensation for police or fire personnel who, prior to starting their jobs, pass physical examinations not revealing any sign of hypertension or heart disease and later contract hypertension or heart disease. The practical purpose of section 7–433c is to allow a police officer or firefighter who develops hypertension or heart disease after coming on the job to recover benefits without having to prove that it arose from conditions of employment.

---

1. The policy obligated Commercial Union as follows:

    I. Coverage A—Workmen's Compensation:
      To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.
      Coverage B—Employers' Liability:
      To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease....

    ....
    II. Defense, Settlement, Supplementary Payments:
      As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent....

On July 6, 1973, police officer Harold Collins filed a claim against West Haven for acute myocardial infarction, hypertension, and heart disease. The Workmen's Compensation Commissioner for the Third Congressional District (the "Commissioner") issued an award of benefits under section 7–433c on March 1, 1976. At that time, there was a question whether section 7–433c benefits were "required of the insured by the workmen's compensation law" and thus covered under West Haven's insurance policy. Commercial Union did not offer to defend the claim or to indemnify West Haven for the awards. West Haven appealed the award to the Connecticut Court of Common Pleas, which remanded the case back to the Commissioner on December 22, 1977. The remand remained pending for the next four years, until November 30, 1981, when West Haven filed a motion under Conn.Gen.Stat. § 31–315 (1989) to reopen and modify the Commissioner's finding and award on grounds that the award could not issue under section 7–433c, but must issue under the general workers' compensation law, because Collins had failed to note on his claim form that he was proceeding under section 7–433c. If West Haven were to have prevailed, the award would have fallen squarely within its insurance coverage. The Commissioner, however, denied the motion on April 23, 1986. The Compensation Review Division affirmed on April 7, 1988, and the Connecticut Supreme Court affirmed on March 21, 1989. *See Collins v. City of West Haven,* 210 Conn. 423, 555 A.2d 981 (1989).

On June 17, 1974, another police officer, George Spragg, filed a claim for a heart attack. As with Collins, the Commissioner issued to Spragg an award of benefits under section 7–433c on March 1, 1976. Again, Commercial Union did not defend or indemnify West Haven. The City appealed to the Court of Common Pleas, which remanded to the Commissioner by a motion dated December 6, 1977. The Commissioner issued a corrected award under section 7–433c on October 20, 1978, from which the City again appealed to the Connecticut Superior Court on November 21, 1978. At this point, the record does not conclusively show whether the claim was remanded or dismissed. Almost three years later, on June 8, 1981, the City moved the Commissioner to reopen and vacate the award on the grounds that Spragg had not given timely notice of his claim and that, because the award stemmed from a work-related injury, it should have been issued under the general workers' compensation law and not under section 7–433c. The Commissioner denied the motion on January 18, 1982, and the Compensation Review Division affirmed on both grounds on July 27, 1984. Then, on West Haven's appeal of the timely notice issue, the Connecticut Appellate Court affirmed on February 18, 1986. *See Cuccuro v. City of West Haven,* 6 Conn. App. 265, 505 A.2d 1 (1986).

On January 17 and April 12, 1976, yet another police officer, Cataldo Cerillo, filed notices of claims for heart disease and hypertension. The Commissioner awarded Cerillo benefits under section 7–433c on October 20, 1978. Again, Commercial Union neither defended nor indemnified West Haven. The City did not appeal the award. On February 17, 1981, the Commissioner issued a supplemental finding and award adjusting Cerillo's benefits to reflect his resumption of employment at a light duty job with the New Haven Savings Bank.

When the three officers filed their claims for benefits, it was unclear under which program they could recover: the general workers' compensation statute or the section 7–433c special program. Nevertheless, all three officers were awarded benefits exclusively under section 7–433c. As previously noted, at the time of the original awards to the three officers in 1976 and 1978, it was unclear whether West Haven's workers' compensation policy provided indemnification for benefits paid out under section 7–433c. This was no longer in question as of August 21, 1979, when the Connecticut Supreme Court, reasoning that section 7–433c benefits were enacted separately from and intended as a supplement to the general workers' compensation law, construed an insurance contract covering workers' compensation liability with language identical to the contract in this case

as not covering section 7–433c benefits. *See Town of Plainville v. Travelers Indem. Co.*, 178 Conn. 664, 425 A.2d 131 (1979).

West Haven commenced this action against Commercial Union on February 9, 1987, alleging that Commercial Union breached its duty to indemnify, its duty to defend, and its duty of good faith and fair dealing, and also violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. §§ 42–110a to –110g (1989), and the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn.Gen.Stat. §§ 38–60 to –64 (1989). The district court, ratifying the findings of a magistrate, applied Connecticut's six-year statute of limitations for breach of contract actions, *see* Conn.Gen.Stat. § 52–576(a) (1989), to the claims alleging a duty to indemnify and a duty to defend, and concluded that the 1979 *Plainville* decision unequivocally placed all three awards outside of the policy's coverage, so that Commercial Union's duties to indemnify and to defend had terminated more than six years prior to the filing of this action on February 9, 1987. The district court also found that *Plainville* cut off Commercial Union's duty of good faith and fair dealing and its statutory duties under CUTPA and CUIPA. Applying a three-year statute of limitations to the duty of good faith and fair dealing claim, *see* Conn.Gen.Stat. § 52–577 (1989), and a three-year statute of limitations to the CUTPA claim, *see* Conn.Gen.Stat. § 42–110g(f), and declining to decide but assuming arguendo that a six-year statute of limitations applied to the CUIPA claim, the district court concluded all these claims were time-barred by *Plainville*.

On appeal, West Haven contends that Commercial Union's duties survived *Plainville*, so that this action is not time-barred.[2] We agree in part. We reverse the district court with respect to the awards from which appeals were taken.

## DISCUSSION

Interpreting the facts, as we must, in the light most favorable to the party against whom summary judgment was sought, Commercial Union did not defend or indemnify West Haven and we assume that it acted in the manner alleged as a basis for West Haven's claims for breach of the duty of good faith and fair dealing and for violations of CUTPA and CUIPA. The issue here is when West Haven's claims for relief accrued, thus commencing the limitations periods.

### A. The Duty to Defend

We first consider which statute of limitations applies. Because federal courts sitting in diversity apply state statutes of limitations for state-created rights, *see Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 1234–35, 93 L.Ed. 1520 (1949), we apply Connecticut's six-year statute of limitations to West Haven's breach of contract claim for the duty to defend. *See* Conn.Gen.Stat. § 52–576(a).

The next consideration is at what point the limitations period began to run on West Haven's duty-to-defend claim. The duty to defend is broader than the duty to indemnify. The general rule is "[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *City of West Haven v. Liberty Mut. Ins. Co.*, 639 F.Supp. 1012, 1017 (D.Conn.1986) (citations omitted) (emphasis in original); *see also Keithan v. Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 138–39, 267 A.2d 660, 665–66 (1970); *Smedley Co. v. Employers Mut. Liab. Ins. Co.*, 143 Conn. 510, 516–17, 123 A.2d 755, 758–59 (1956); *cf. Lee v. Aetna Casualty & Sur. Co.*, 178 F.2d 750, 753 (2d Cir.1949) (L. Hand, C.J.) (applying New York law). *See generally* 7C J. Appleman, *Insurance Law and Practice* §§ 4682–86, at 16 to 179 (1979). When the three officers made their claims in 1973, 1974, and 1976, it was uncertain but possi-

---

**2.** West Haven does not brief the issue of whether Commercial Union was in breach of its duty to indemnify, although it raised this in its complaint. We find that *Plainville* plainly forecloses this claim.

ble that their claims came within the policy coverage. Consequently, at the time each officer made his claim, Commercial Union breached its duty to defend, and West Haven's cause of action accrued.

Connecticut courts, however, have recognized that where there is a continuing course of conduct constituting a breach of duty, the limitations period does not begin to run, or is tolled, until that conduct terminates. *See Fichera v. Mine Hill Corp.,* 207 Conn. 204, 209, 541 A.2d 472, 474 (1988) (statute of limitations tolled); *Handler v. Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793, 795 (1957) (statute of limitations does not begin running). We agree with the magistrate that Commercial Union's breach of its duty to defend was continuous and thereby did not commence running the limitations period until the duty to defend was complete. *See Skidmore, Owings & Merrill v. Connecticut Gen. Life Ins. Co.,* 25 Conn.Supp. 76, 93, 197 A.2d 83, 91 (Conn.Super.Ct.1963) ("In considering the application of the Statute of Limitations to this case, one must distinguish between a contract obligation ... providing for a continuing, indivisible responsibility for the attainment of an end result, and a contract for the performing of a specific, definable act."). The duty to defend "lasts until the stage of proceedings is reached when it is clear that no element of the subject matter of the suit is within the scope of the policy." J. Appleman, *supra,* § 4684.01, at 100. This duty ordinarily continues through prosecution of appeals. *See id.* § 4688, at 200–01.

■ Given that the duty to defend was continuous and that the period of limitations did not begin to run, we reach the central issue presented by this appeal: whether *Plainville*'s holding that section 7–433c benefits are not required under general workers' compensation law extinguished Commercial Union's continuing duty to defend and started the limitations period running.

We find that *Plainville* cut off only one avenue by which Commercial Union might possibly have been liable and under a resulting duty to defend. West Haven raised in its appeal of the Collins award and its apparent appeal of the Spragg award at least two other claims which, if either one had prevailed, would have invoked the policy coverage. In the Collins appeal, West Haven raised the question, not decided until this year in *Collins,* whether the Commissioner may make an award under section 7–433c when the claimant does not timely notify the employer of an intent to invoke that statute. In the apparent Spragg appeal, up until the decision by the Compensation Review Division on July 27, 1984, West Haven raised the issue eventually decided by the Connecticut Supreme Court in *Bakelaar v. City of West Haven,* 193 Conn. 59, 475 A.2d 283 (1984), namely, whether the Commissioner may issue an award under section 7–433c when it might alternatively be made on general workers' compensation grounds.

In sum, *Plainville* settled only the question whether section 7–433c benefits are within a policy such as the one at issue here. It did not resolve whether the Commissioner was entitled to issue the Collins and Spragg awards under section 7–433c rather than under general workers' compensation. *See City of West Haven v. Liberty Mut. Ins. Co.,* Civ. No. N–87–68 (PCD) (D.Conn. Jan. 9, 1989) at 8–9, 11 n. 6 (duty to defend survives *Plainville* ).

We are aware that these alternative theories of liability did not surface until West Haven filed motions before the Commissioner to reopen the judgments in June and November 1981, long after *Plainville* was decided and when Commercial Union might have thought it was no longer possibly liable. The critical fact here, however, is not the length of time that elapsed, but that the Collins motion and apparently the Spragg motion were raised as part of the appeal, i.e., the continously pending proceeding before the state courts, the Compensation Review Division, and the Commissioner challenging the original claim awards. Commercial Union was under a continuing duty to defend appeals; it should have been involved in West Haven's litigation strategy from the day notices of claims were filed. Because it failed to be so involved, we cannot

be sympathetic to any surprise that West Haven's delays might have engendered. As long as an appeal is pending that possibly raises issues invoking liability under an insurance policy, an insurance company bound by a general duty-to-defend clause remains under a duty to defend so long as it might be held liable. On the other hand, the duty to defend is not the duty to commit hari kari. Once the insured exhausts an appeal from the original award in question, the insurer is under no duty to defend subsequent collateral attacks on the judgment that might render it newly liable on the policy.

Therefore, we reverse the judgment of the district court with respect to the Collins duty-to-defend claim. With respect to the Spragg claim, we remand to the district court to determine whether the June 1981 motion to reopen the award was in the context of an appeal from the original award. If it was part of the appeal, we reverse as to the Spragg duty-to-defend claim as well. If, on the other hand, the appeal was no longer alive and the motion was in the nature of a collateral attack, we affirm the judgment of the district court. With respect to the Cerillo claim, because no appeal was taken, we affirm the district court. The 1981 modification of the Cerillo award is immaterial to Commercial Union's duty to defend because it did not potentially invoke the policy coverage.

## B. *Duty of Good Faith and Fair Dealing and CUTPA and CUIPA*

■ West Haven contends that statements by Commercial Union's attorney in letters to its client, which expressed hope that West Haven would lose its appeals from the officers' claims, breached the duty of good faith and fair dealing. We agree with the district court that a claim involving a duty of good faith and fair dealing sounds in tort, *see Doyle v. St. Paul Fire & Marine Ins. Co.*, 583 F.Supp. 554, 555 (D.Conn.1984) (applying Connecticut law), and is properly governed by Connecticut's three-year general tort statute of limitations. *See* Conn.Gen.Stat. § 52–577. We also agree that inasmuch as the duty in tort stemmed from the continuing contractual duty to defend, it was of a continuing

nature. We find, however, for the same reasons discussed above, that the duty was not terminated by *Plainville* with respect to the awards from which appeals were taken. The Collins appeal and the apparent Spragg appeal kept Commercial Union's liability in doubt until March 1989 and July 1984 respectively, both within the three-year limitations period. With respect to the Cerillo award, which was not appealed, West Haven points to no evidence of bad faith within the limitations period.

■ A similar analysis and result applies to the CUTPA and CUIPA claims. We agree with the district court that the three-year limitations period applies to the CUTPA claim, *see* Conn.Gen.Stat. § 42–110g(f), and that at the maximum a six-year limitations period applies to the CUIPA claim. Because the alleged CUTPA and CUIPA violations parallel the breach of contract claim, we find that this contract creates a "special relationship" sufficient for tolling the statute of limitations. *See Fichera*, 207 Conn. at 210, 541 A.2d at 474.

Therefore, in regard to the good faith and fair dealing claim and the claims under CUTPA and CUIPA, we reverse as to the Collins award, remand as to the Spragg award, and affirm as to the Cerillo award, with identical accompanying instructions as for our disposition of the duty-to-defend claim above.

## C. *Damages*

■ Finally, we note that the statute of limitations imposes certain limits on damages in cases involving continuing conduct. Because of the continuing-course-of-conduct toll of the statute of limitations, Commercial Union may be found liable on the basis of its conduct before the limitations period began to run. It is liable, however, only for damages starting from the date calculated by subtracting the limitations period from the date of filing. *See Titcomb v. Norton Co.*, 208 F.Supp. 9, 15 (D.Conn.1959) (barring recovery for claim of continuing breach of implied contract and tortious breach of confidence for breaches occurring more than the statutory period prior to commencement of the action), *aff'd*, 307 F.2d 253 (2d Cir.1962).

*Hitchcock v. Union & New Haven Trust Co.*, 134 Conn. 246, 259, 56 A.2d 655, 661 (1947) (barring recovery of back-pay for overtime performed more than the statutory period prior to commencement of the action); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). For the duty-to-defend claim, for example, the ordinary measure of damages includes reasonable defense expenses and the amount of the judgment against the insured. *See Keithan*, 159 Conn. at 139, 267 A.2d at 666. But, under the above rule limiting damages, Commercial Union may be held liable only for damages allocable to the period starting six years prior to the filing of the complaint on February 9, 1987. Therefore, if Commercial Union is liable, it would be liable only for expenses after February 9, 1981, but not for prior defense expenses or benefits paid.

Judgment in accordance with opinion.