[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CNA'S CLAIM OF RELEASE, AS ASERTED IN OPPOSITION TO VANDERBILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS OWN CROSS MOTION FOR SUMMARY JUDGMENT
In this case, plaintiff R.T. Vanderbilt Company, Inc. ("Vanderbilt"), a New York corporation engaged in the chemical manufacturing business, has brought suit against defendant Continental Casualty Company ("CNA"), an CT Page 10425 Illinois insurance company affiliated with the CNA Insurance Companies of Chicago, Illinois which sold primary comprehensive general liability and excess umbrella liability insurance policies to it during the period from January 1, 1956 until March 3, 1977, to obtain a declaratory judgment that CNA must defend and indemnify it, under certain of its CNA insurance policies ("the Policies"),[1] in connection with several administrative actions ("the Underlying Actions") brought against it by the United States Environmental Protection Agency ("EPA"). The Underlying Actions all concern the disposal of industrial wastes from Vanderbilt's Bethel, Connecticut facility ("the Bethel Site") at different landfills or other disposal sites in Connecticut and Rhode Island, including the Solvents Recovery Source of New England ("SRSNE") site and the Old Southington Landfill ("OSL") site in Southington, Connecticut. In each such Action, the EPA claims that Vanderbilt is or may be responsible for property damage due to environmental hazards resulting from the disposal of its wastes at the affected site. On that basis, it seeks order requiring Vanderbilt to contribute to the cleanup of each site.
In its Second Amended Complaint dated April 19, 1999, Vanderbilt asserts that each claim made against it in the Underlying Actions is covered by the Policies at issue in this case. It thus contends that CNA has a contractual duty under each such Policy to defend it in the Underlying Actions and to indemnify it for all sums it becomes obligated to pay as cleanup costs, by judgment or settlement, in those Actions.
CNA has denied that it has a duty under any of its Policies to defend or indemnify Vanderbilt in connection with the Underlying Actions. Seegenerally Answer and Special Defenses to Second Amended Complaint, pp. 3-98. In addition, it has interposed thirty-nine special defenses to Vanderbilt's claims for coverage, including the following:
As And For A Third Special Defense:
 370. The obligations of CNA to plaintiff, if any obligations exist, are defined by, limited by and controlled by the policy of insurance Vanderbilt purchased from CNA, including the coverages defined in such policy, the exclusions set forth in such policy, and the deductibles and limits set forth in such policy.
* * * *
As And For A Fifteenth Special Defense:
382. Vanderbilt's claims are barred in whole or in part by CT Page 10426 the limits of liability, endorsements, and other terms, conditions, limitations and exclusions contained in or incorporated by reference, expressly or implicitly, in or by the policies issued by CNA to Vanderbilt.
* * * *
As And For A Thirty-Ninth Special Defense:
 406. Vanderbilt has already released CNA from any obligation in regards to some or all of the claims asserted by Vanderbilt in the Complaint.
 Id., pp. 99, 102, 106.
On July 7, 1998, Vanderbilt moved this Court for partial summary judgment as to CNA's alleged duties to defend and indemnify it under two of its Policies, the 1965 CNA Policy and the 1968 CNA Policy, in connection with two of the EPA's Underlying Actions against it, the SRSNE Action and the OSL Action. The grounds for that Motion were as follows.
As for CNA's alleged duty to defend it under the Policies in question in the SRSNE and OSL Actions, Vanderbilt argues: (1) that a liability insurer must defend its insured in any action where any allegation in the complaint "`falls even possibly within the coverage' provided by its policies"; Memorandum of Law (7/7/98), pp. 17-18 (quoting City of WestHaven v. Commercial). Union Ins. Co., 894 F.2d 540, 544 (2d Cir. 1990) (applying Connecticut law) (emphasis in original)); (2) that the allegations made against it in the SRSNE and OSL Actions raise the possibility of coverage under both Policies because each Action constitutes a "suit" to recover "damages" for "property damage" that may have occurred within the policy periods; id., pp. 19-37; and (3) that no exclusion in either Policy eliminates the possibility of coverage thereunder. Id., pp. 37-38.
As for CNA's alleged duty to indemnify Vanderbilt for all sums it may become obligated to pay as cleanup costs, by judgment or settlement in the SRSNE and OSL Actions, Vanderbilt argues: (1) that any insurer that wrongfully refuses to defend its insured in any suit to recover damages for a covered claim must pay its insured, in the absence of fraud or collusion, the total amount of any judgment obtained against it or reasonable settlement it negotiates in that suit, up to the limit of liability fixed by the policy in question; and (2) that here, CNA's refusal to defend it has been and continues to be wrongful. Id. at 40-41. Vanderbilt supported its Motion with the affidavit of its Vice-President-Treasurer and Chief Financial Officer, Joseph Denaro, and CT Page 10427 several attached exhibits.
CNA responded to Vanderbilt's Motion For Partial Summary Judgment by filing its own Cross Motion For Summary Judgment dated November 12, 1998, together with a memorandum of law stating its positions on both Motions and an affidavit from one of its attorneys, James M. Adrian, with several attached exhibits.
In its Memorandum of Law dated November 12, 1998, CNA made three basic arguments why Vanderbilt's Motion For Partial Summary Judgment should be denied and its own Cross Motion For Summary Judgment should be granted. First and foremost, it argued that it had been released from any obligation to defend or indemnify Vanderbilt in connection with the SRSNE and OSL Actions under the terms of its 1989 agreement with Vanderbilt ("Settlement Agreement") to settle an earlier lawsuit between them in the United States District Court for the Southern District of New York. The other lawsuit, entitled R.T. Vanderbilt Company, Inc. v. ContinentalCasualty Company, Civ. Action No. 88-2239 (MJL) (the "Bethel Action"), concerned the availability of insurance coverage for the cleanup of environmental contamination at Vanderbilt's Bethel facility. According to CNA, the Settlement Agreement released it from all liability for any claim "in any way relating" to the Bethel facility, including any claim for costs to clean up environmental contamination elsewhere, resulting from the off-site disposal of Bethel wastes.
CNA's second argument in opposition to Vanderbilt's Motion and in support of its own Cross Motion For Summary Judgment was that the limits of coverage under Vanderbilt's 1965 and 1968 CNA Policies were exhausted by its payment of $1.3 million to Vanderbilt, under those and other CNA Policies, pursuant to the 1989 Settlement Agreement. Memorandum of Law (11/12/98), p. 9.
Third and finally, CNA argued that the EPA' s claims against Vanderbilt are not covered by the Policies in question because the Underlying Actions in which those claims are made are not "suits," and the monies it seeks in those Actions for the cleanup of environmental contamination are not "damages" for the destruction of property, within the meaning of those Policies.
After the filing of CNA's Cross Motion For Summary Judgment, the parties exchanged several additional briefs on the issues raised and addressed in that Motion and Vanderbilt's earlier Motion For Partial Summary Judgment. The principal focus of those briefs was CNA's threshold claim that it had been released, under the terms of the 1989 Settlement Agreement, from any obligation to defend or indemnify Vanderbilt in connection with claims for costs to clean up environmental contamination CT Page 10428 resulting from the off-site disposal of Bethel wastes. Thus, in further support of their positions on that issue, the parties submitted supplemental affidavits from the attorneys who represented them in the negotiations that produced the Settlement Agreement: Dennis Race for Vanderbilt and Stuart C. Levene for CNA. In addition, after presenting oral argument on the release issue only, they provided the Court with a copy of the Complaint in the Bethel Action. The case is now before the Court for decision on those aspects of, the parties' Motions that are subject to resolution based on CNA's claim of release.
 I
"Pursuant to Practice Book § 384 [now § 17-49], summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarez v. Dickmont Plastics Corporation, 229 Conn. 99,105, 639 A.2d 507 (1994). "A material fact is one that will make a difference in the result of the case." Cummings Lockwood v. Gray,26 Conn. App. 293, 297, 600 A.2d 1040 (1991). "[T]he `genuine issue' aspect of summary judgment procedure requires the parties to bring forward the trial court evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 379, 260 A.2d 596 (1969). "`Issue of fact' encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." Id., 379.
"[I]t is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." Nolan v. Borkowski, 206 Conn. 495, 505, 538 A.2d 1031
(1988). "In passing on a motion for summary judgment, the trial court is to determine whether an issue of fact exists but may not try that issue if it does exist." Id., 500. "The party seeking summary judgment bears the burden of showing the nonexistence of any material fact." Cummings Lockwood v. Gray, supra, 26 Conn. App. at 297. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Dougherty v. Graham, 161 Conn. 248, 250, 287 A.2d 382
(1971). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Scrapchansky v. Plainfield,226 Conn. 446, 450, 627 A.2d 1329 (1993). CT Page 10429
 II
To defeat Vanderbilt's Motion For Partial Summary Judgment based on its claim of release, CNA must present competent evidence tending to prove that it was in fact released, under the terms of its 1989 Settlement Agreement with Vanderbilt, from all liability for claims against Vanderbilt arising from the off-site disposal of wastes generated at Vanderbilt's Bethel facility. To prevail on its own Cross Motion for Summary Judgment based on that claim, however, it must go further to conclusively establish that there is no genuine issue of material fact that it was so released, and thus that it is entitled to judgment as a matter of law.
At the heart of CNA's release claim are two documents: the Settlement Agreement in the Bethel Action, pursuant to which CNA claims that it was released from all claims for which Vanderbilt seeks coverage in this lawsuit; and the General Release dated March 6, 1989 ("Release") which was signed and executed by Vanderbilt's President, Gustav L. Fiederlein, in accordance with the terms of the Settlement Agreement. The Settlement Agreement, which was attached as Exhibit C to the affidavit of CNA attorney James M. Adrian, provided in relevant part as follows:
 AGREEMENT * * * * WITNESSETH WHEREAS, as a result of claims and investigations by the Connecticut Department of Environmental Protection, the United States Environmental Protection Agency and the United States Attorney General's Office regarding Vanderbilt's Bethel, Connecticut facility (the "Site"), Vanderbilt has made various claims and given notice of additional potential claims (collectively, the "Claims") under insurance policies nos. CL 4292747-R, CL 4298781-R, CCP 4138373-R, CCP 8548748-R, CCP 9024038-R, CCP 3000112, RDU 9433526, RDU 9004526, RDU 1251453, RDU 8046898, and all other insurance or excess insurance policies issued to Vanderbilt (or any subsidiary, affiliated or related entities) by Continental Casualty or any other of the CNA Insurance Companies (collectively, the "Policies"); and
WHEREAS, Vanderbilt asserts it has paid in excess of $500,000 in connection with the defense of the Claims and in excess of $3 million for clean up of the Site and related costs to date which it contends is covered by the Policies; and CT Page 10430
 WHEREAS, Continental Casualty has denied coverage for the Claims, has raised defenses and potential defense to the Claims under the Policies, denies that it is responsible for any of the sums paid by Vanderbilt in connection with the defense of the Claims or the clean up of the Site and has reserved all other rights and defenses it may have to the Claims under the Policies; and
 WHEREAS, Vanderbilt has commenced an action in the United States District Court for the Southern District of New York styled "R.T. Vanderbilt Company, Inc., Vanderbilt Chemical Corporation, Inc. v. Continental Casualty Company", Civ. Action No. 88-2239 (MJL) (the "Action"), seeking a declaration that the Claims are covered under the Policies; and
 WHEREAS, Continental Casualty has denied and continues to deny the allegations asserted by Vanderbilt in the Action; and
 WHEREAS, while Continental Casualty continues to believe there is no coverage under the Policies for the Claims, Continental Casualty has concluded that, in order to avoid the further expense, inconvenience, burden and any uncertainty association with the action, it is desirable to reach an agreement in the manner and upon the terms and conditions set forth in this Agreement; and
 WHEREAS, while Vanderbilt has contested the defenses raised by Continental Casualty and continues to believe that there is coverage under the Policies for the Claims, Vanderbilt has concluded that, in order to avoid any uncertainty that is Involved in the insurance coverage for the Claims and the Action and the further expense, inconvenience and burden associated with the Action, it is desirable to reach an agreement in the manner and upon the terms and conditions set forth in this Agreement;
 NOW, THEREFORE, the parties to this Agreement, in consideration of the mutual promises hereinafter set forth, intending to be legally bound, hereby agree as follows:
 1. Settlement Amount. In settlement of the action and for the other good and valuable consideration provided for in this Agreement, Continental Casualty shall pay the aggregate amount of One Million Three Hundred Thousand Dollars ($1,300,000) to, Vanderbilt.
 * * * *
4. Releases. Concurrently with the execution of this Agreement, Vanderbilt shall deliver to Continental Casualty a fully and duly CT Page 10431 executed written release of any and all rights and claims, including but not limited to the Claims, which Vanderbilt (or any subsidiary, affiliate or other entity) has or may have under the Policies as a result of, with respect to or which in any way relate to or involve the Site or any accidents, activities, occurrences or events on or originating at the Site. Further, with respect to the Site, as of the execution of this Agreement, Vanderbilt shall, on behalf of itself and any subsidiary, affiliate or other entity, release any and all claims, including but not limited to claims for the payment of defense costs or fees, that they may have against Continental Casualty or its agents relating to the Policies or to the handling of any claims or notices of possible claims under the Policies. The release provided for in this paragraph shall be substantially in the form as that annexed hereto as Ex. B.
 5. Automatic Amendment of Policies. As of the execution of this Agreement, the Policies shall be deemed to be automatically amended to exclude and no longer provide any coverage for any and all claims, suits, losses, damages, or injuries to person or property that in any way relate to, involve or arise out of any accidents, occurrences, activities or events at or on or originating at or on the Site. It is not the excess insurance policies other than the Policies.
 * * * * 10. Entire Agreement. This Agreement constitutes the entire agreement of the parties. No representations, warranties or promises have been made or relied upon by any party except as expressly stated and contained in this Agreement, and this Agreement supersedes all prior agreements and understandings with respect to the matters covered by this Agreement.
 * * * * 14. Governing Law. This Agreement shall be interpreted and construed in accordance with the Laws of the State of New York.
 * * * * IN WITNESS WHEREOF, the parties have executed this Agreement and caused the same to be of duly delivered on their behalf as of the date first above written.
R.T. VANDERBILT COMPANY, INC. By: ___________/SS/__________ Gustav L. Fiederlein, CT Page 10432 President
 VANDERBILT CHEMICAL CORPORATION By: ___________/SS/__________ Gustav L. Fiederlein, President
 CONTINENTAL CASUALTY COMPANY By: ___________/SS/__________ Thomas J. Payton Assistant Vice President
Settlement Agreement, pp. 1-8 (Emphasis added).
The Release executed pursuant to the Settlement Agreement provides, in turn, as follows:
 GENERAL RELEASE In accordance with the terms of the Agreement . . . among R.T. Vanderbilt Company, Inc. and Vanderbilt Chemical Corporation (collectively, "Vanderbilt") and Continental Casualty Company ("Continental Casualty"), the terms of which are expressly incorporated by reference in the General Release (the "Agreement"), and for and in consideration of the sum of One Million Three Hundred Thousand Dollars ($1,300,000) lawful money of the United States of America paid to and received by Vanderbilt, Vanderbilt, on behalf of itself and, with full power and authority, all insureds under the insurance policies identified in the Agreement (at page 1, thereof) (the "Policies") and any and all of their subsidiaries, affiliates or other related entities, insofar as this Release relates or refers in any fashion to claims, matters, etc., involving Vanderbilt's Bethel, Connecticut facility, has remised, released and forever discharged and by these presents does for their successors in interest, assigns, heirs, executors, administrators, employees and agents, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreement, promises, variances, trespasses, damages, judgments, extents, executions,CT Page 10433 claims and demands whatsoever, in law or in equity, which it or they ever had, now have or which it or they, or its or their successors in interest, assigns, heirs, executors or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these premises:
 1. with respect to the claims and the events and occurrences underlying the claims Vanderbilt asserted and any and all claims which Vanderbilt could have asserted in the action it commenced in the United States District Court for the Souther District of New York styled "R.T. Vanderbilt Company, Inc., Vanderbilt Chemical Corporation, Inc. v. Continental Casualty Company, Civ. Action No. 88-2239 (MJL)" (the "Action")
 2. by reason of, under or with respect to the Policies as a result of or based upon any claims, accidents, occurrences, activities or events of any type or kind on or originating at Vanderbilt's Bethel, Connecticut facility (which is more particularly described in the Complaint in the Action) (the "Site"); and
3. by reason of, under or with respect to the Policies or any obligation which Continental Casualty or its successors in interest, assigns, heirs, executors, employees and agents may at any time now or in the future have as a result of or based upon any claims, accidents, occurrences, activities or events of any type or kind at or on or originating at or on the site including, but not limited to, (i) defense, (ii) reimbursement or indemnification obligations, (iii) payment of defense fees or costs, and (iv) the handling of any claim, notice of claim or notice of possible claim, if any, and agree that the Policies are deemed to be amended to exclude and no longer provide any coverage for any and all claims, suits, losses, damages or injuries to person or property that in any way relate to, involve or arise out of any accidents, occurrences, activities or events, in the past or future, at or on or originating at or on the Site. CT Page 10434
 IN WITNESS WHEREOF we have hereunto set our hands and our seals this 6th day of March, 1989.
[Corporate Seal] R.T. VANDERBILT COMPANY, INC. By: ___________/SS/__________ Gustav L. Fiederlein, President
[Corporate Seal] VANDERBILT CHEMICAL CORPORATION By: ___________/SS/__________ Gustav L. Fiederlein, President
Release, pp. 1-3 (Emphasis added).
CNA argues that, under the "plain language" of the foregoing Settlement Agreement and Release, it has been released from all liability to defend or indemnify Vanderbilt in connection with any of the claims for which Vanderbilt seeks coverage in this action. Each such claim, it notes without contradiction, seeks to recover costs for the cleanup of environmental contamination allegedly caused by the off-site disposal of wastes generated at Vanderbilt's Bethel, Connecticut facility. Each, then, it argues, is a claim as to which it was released under ¶ 4 of the Settlement Agreement, insofar as it provides for the "release of any and all . . . claims, . . . which Vanderbilt has or may have under the Policies as a result of, with respect to or which in any way relate to or involve the Site or any accidents, activities, occurrences or events on or originating at the Site." Here, argues CNA, the environmental claims for which Vanderbilt seeks coverage all "relate to or involve the Site" because each concerns wastes which were generated at the Site. Each such claim, it further argues, "relate[s] to or involve[s] . . . activities, . . . or events on or originating at the Site," for each assertedly relates to or involves the processes, at or originating at Bethel, by which the wastes were "generated," and later "sent" or "transported" elsewhere for off-site disposal.
By that same logic, CNA argues that all of the EPA's claims against Vanderbilt were automatically excluded from coverage under Vanderbilt's CNA Policies by ¶ 5 of the parties' Settlement Agreement, which provides that,
As of the execution of this Agreement, the Policies shall be deemed to be automatically amended to exclude and no longer provide any coverage for any and all claims, suits, losses, damages or injuries to person or property that in any way relate to, involve or CT Page 10435 arise out of any accidents, occurrences, activities or events at or on or originating at or on the Site.
Contending once again that the claims for which Vanderbilt here seeks coverage "in [some] way relate to, involve or arise out of . . . activities or events at or on or originating at or on the Site" — to wit, the "generation" and "transportation" for off-site disposal of Bethel wastes — CNA insists that such claims are now excluded from coverage under the subject Policies.
Vanderbilt has responded to the foregoing arguments in two basic ways. First, it claims that CNA has distorted the true meaning of the Release, which it describes as a "site release." The Release, it insists, was intended only to release CNA from claims and liabilities directly involving the Bethel facility. Under controlling principles of New York law, claims Vanderbilt, a release must be narrowly construed under the general law of contract. Neuman v. Harmon, 965 F. Sup. 503, 508
(S.D.N.Y. 1997). "It is well settled," Vanderbilt argues, "that New York law requires that a release contains an explicit, unequivocal statement of a present purpose to release defendant from liability. The words must manifest the releaser's intent to discharge and the dispositive element in determining the scope of a release is the parties' intent." Memorandum of Law (12/4/98) (quoting Neuman v. Harmon, supra, 965 F. Supp. at 508.) Particularly where, it argues, as in this case, "[a] release [has been] `drafted by sophisticated counsel in a commercial context, [it] should be enforced in accordance with the language employed.'" Memorandum of Law (12/4/98) (quoting TAG Group S.A. v. Haas Haynie Corp., 637 F. Sup. 121
(S.D.N.Y. 1986)).
Turning, then, to the language of the Release, Vanderbilt makes several pertinent observations. First, it notes that the Release provides only for the release three limited kinds of liability:
 1. [that] with respect to the claims or events underlying the claims Vanderbilt asserted and any and all claims it could have asserted in [the Action being settled by the Agreement];
 2. [that] by reason of, under or with respect to the Policies as a result of or based upon any claims, accidents, occurrences, activities on events of any type or kind on or originating at Vanderbilt's Bethel, Connecticut facility . . .; and
3. [that] by reason of, under or with respect to the Policies or any obligation which Continental Casualty CT Page 10436 or its successors in interest, assigns, heirs, executors, employees and agents may at any time nor or in the future have as a result of or based upon any claims, accidents, occurrences, activities or events of any type or kind at or on or originating at or on the Site including, but not limited to, (i) defense, (ii) reimbursement or indemnification obligations, (iii) payment of defense fees or costs, and (iv) the handling of any claim, notice of claim or notice of possible claim, if any, and agree that the Policies are deemed to be amended to exclude and no longer provide any coverage for any and all claims, suits, losses, damages or injuries to person or property that in any way relate to, involve or arise out of any accidents, occurrences, activities or events, in the past or future, at or on or originating at or on the Site.
Release, pp. 2-3. Each kind of liability so released, argues Vanderbilt, "is limited to claims, accidents, occurrences, activities, or events involving contamination on or emanating from [Vanderbilt's] Bethel Site. The Release does not mention any other environmental sites, nor does it mention anything with respect to waste generated at Bethel but sent elsewhere." Memorandum of Law (12/4/98), p. 16. As such, contends Vanderbilt, the Release cannot reasonably be read to cover contamination at other sites unless the contamination itself, or accident, occurrence, activity or event that proximately caused it, "originate at or on" the Bethel Site.
As for CNA's claim that it was released from liability with respect to the EPA's claims against Vanderbilt because those claims all relate to wastes "generated" at and "sent" or "transported" for disposal purpose from the Bethel facility, Vanderbilt notes that nothing in the Release purports to release CNA from any liability for claims relating to "wastes" "generated" at the Bethel facility, or any claims relating to the disposal of Bethel wastes. In fact, it rightly notes, the terms "wastes," "generated," "sent" or "transported" appear nowhere in the Release.
On that basis, Vanderbilt concludes that, under the plain meaning of the Release, what must "originate on or at" the Bethel Site, in order to be covered by the Release, are not the "wastes" themselves, or the processes by which they were "generated" or "sent" or "transported" to off-site locations where they are claimed to have caused, contamination. Instead, what must "originate on or at" the Bethel Site, for a claim "related" to it to come within the terms of the Release, is the accident, occurrence, activity or event that actually caused the CT Page 10437 contamination, and thus gave rise to a covered claim for damages under the Policies. Here, concludes Vanderbilt, none of the EPA's claims against it was released because each such claim is based on a contamination-causing accident, occurrence, activity or event that originated elsewhere — not at Bethel, where the wastes admittedly were generated, but at the off-site location where they were disposed of and the contamination occurred.
As a fallback to its plain-language analysis of the subject Release, Vanderbilt presented an affidavit from Dennis Race, the attorney who negotiated the Settlement Agreement and Release on its behalf with CNA's counsel, Stuart C. Levene, in 1989. Mr. Race averred that during the drafting of the Settlement Agreement and Release, he expressed to CNA's counsel Vanderbilt's desire to settle and release only the claims at issue in the Bethel Action, which involved only the cleanup of Vanderbilt's Bethel facility. CNA insisted, however, on a broader settlement agreement and release that would cover all claims that potentially could be brought by any person arising from the contamination at the Site, including third-party personal injury claims, and property damage claims caused by migration of the contamination from the Site. Race Affidavit, ¶ 4. According to Mr. Race, CNA's counsel repeatedly stated that CNA never wanted to hear again about claims concerning the Bethel Site. Id.
Mr. Race further averred that at no time during settlement negotiations, did the parties discuss a release involving future claims arising at other environmental sites. More specifically, counsel for CNA never expressed a desire for a global settlement release that would release CNA from any liability for environmental contamination at any other known or unknown environmental sites if the contamination of those sites was caused, in part, by wastes generated at the Bethel facility. Accordingly, concludes Vanderbilt, ¶ 4 of the Settlement Agreement expressly limited Vanderbilt's release obligations to claims or possible claims under the Policies "with respect to the Site." Settlement Agreement, ¶ 4.
CNA reacted harshly to Vanderbilt's attempted reliance upon the affidavit from Attorney Race. Invoking the language of ¶ 10 of the Settlement Agreement, which expressly states that the "Agreement supersedes all prior agreements and understandings with respect to the matters covered by this Agreement," CNA accused Vanderbilt of attempting to rewrite history when it described the Release as a "site release" and used Attorney Race's purported recollection and description of his settlement negotiations to support its claim. Insisting that the language of the Release and Settlement Agreement is clear and unambiguous, CNA argues that under New York law, where "the language of the release is CT Page 10438 clear, effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties may have intended something else is irrelevant. LeMay v. H.W. Kenney, Inc., 508 N.Y.S.2d 769, 770 (4th Dept, 1986)." Memorandum of Law (12/16/98), p. 7. Here, then, concludes CNA,
 Coverage is precluded for those sites which were polluted by waste that was a product of activities at Vanderbilt's Bethel facility and which originated from the Bethel facility because the Releases (and Amended Policies') written terms clearly and unambiguously release CNA from claims arising out of or related to activities or events of any kind on or originating at Vanderbilt's Bethel, Connecticut facility or which "in any way relate to, involve, or arise out of . . . the [Bethel Facility]."
Id. at 8.
The parties clearly agree that under New York law, plain
and unambiguous language in a release negotiated by counsel for sophisticated commercial parties must be interpreted and enforced in strict accordance with its terms. However, though each asserts that the language of the subject Release has such a plain and unambiguous meaning, they are obviously at loggerheads as to what that meaning is.
Interestingly, though neither party has specifically noted it, their "plain language" dispute highlights a troublesome inconsistency between the language of the Release and that of the "Releases" provision of the Settlement Agreement (¶ 4), pursuant to which the Release was executed. In the Release, to reiterate, Vanderbilt expressly released CNA from all liability under the Policies "as a result of or based upon any claims, accidents, occurrences or events of any type or kind on or originating at Vanderbilt's Bethel, Connecticut facility[.]" In similar language, it also agreed in the Release "that the Policies are deemed to be amended to exclude and no longer provide any coverage for any and all claims, suits, losses, damages or injuries to person or property that in any way relate to, involve or arise out of any accidents, occurrences, activities or events, in the past or future, at or on or originating at or on the Site." These two paragraphs strongly support Vanderbilt's argument that, apart from claims based on accidents, occurrences, activities or events which take place at the Bethel Site itself, the Release extends only to claims based on accidents, occurrences, activities or events which "originate at or on" that Site. CT Page 10439
In the "Releases" provision of the Settlement Agreement, by contrast, the following, more expansive language appears:
 Concurrently with the execution of this Agreement, Vanderbilt shall deliver to Continental Casualty a fully and duly executed written release of any and all rights and claims, including but not limited to the claims [made in the lawsuit being settled], which Vanderbilt . . . has or may have under the Policies as a result of, with respect to or which in any way relate to or involve the Site or any accidents, activities, occurrences or events on or originating at the Site. . . . The release provided for in this paragraph shall be substantially in the form as that annexed hereto as Ex. B.
Settlement Agreement, ¶ 4. (Emphasis added.) So written, this provision can be read to call for a broader form of release than that which Vanderbilt actually executed under the Settlement Agreement. Not only does it contemplate, as the Release itself mandates, the release of "all rights and claims . . . which Vanderbilt has or may have under the Policies as a result of, with respect to or which in any way relate to or involve . . . any accidents, activities, occurrences or events on or originating at the Site," but it provides more generally for the release of all such rights and claims by Vanderbilt ". . . as a result of, with respect to or which in any way relate to or involve the Site[.]"
One plausible reading of the foregoing provision, as CNA has argued, is that the Settlement Agreement released it from many claims other than those narrowly relating to or involving accidents, occurrences, activities or events at or on, or originating at or on, the Bethel Site. Indeed, under the express language of the provision, CNA claims that it has been released from all claims, of every kind and description, that in any way relate to the Site. Such a reading, of course, would be consistent with the ordinary rule of contract interpretation that "every provision of the contract should be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." See, e.g., Connecticut Co. v. Division 425,147 Conn. 608, 617, 164 A.2d 413 (1960). In light of that reading, CNA contends that a claim is sufficiently related to the Bethel Site to be released under the Settlement Agreement if the waste, whose disposal gives rise to the claim is Bethel waste.
An alternative reading of the Settlement Agreement is that in spite of the apparent breadth of its above-quoted Releases provision, it was never actually intended to release a broader set of claims than those described CT Page 10440 in the Release executed thereunder. This argument is supported first by the final sentence of the Releases provision, which specifically provides that "[t]he release provided for in this paragraph shall be substantially in the form as that annexed hereto as Ex. B." Settlement Agreement, ¶ 4. It has never been suggested by any party to the Settlement Agreement that the Release which Vanderbilt signed and issued did not comply, in form or in substance, with the terms of the Settlement Agreement. Hence, it can fairly be argued that the true scope of the release called for by the Settlement Agreement is entirely consistent with the written Release actually executed by Vanderbilt.
This argument is also supported by the congruence between the scope of the release, as articulated in the written Release, and the scope of the policy exclusion agreed to by the parties, as set forth both in the Release and in the Settlement Agreement. If, as both parties have suggested in their oral and written arguments on these Motions, the parties intended to exclude all released claims from coverage under the Policies, it makes no sense for them to have articulated the release and the exclusion in different language. Hence, because the exclusion is so written as to conform to the scope of the written Release, it can logically be inferred that the parties did not intend their Settlement Agreement to provide for a broader release.
Despite its appeal, however, the foregoing argument is not sufficiently compelling to eliminate any genuine issue of material fact as to the true meaning of the Releases provision of the Settlement Agreement, or even of the written Release. Indeed, an additional element of uncertainty requiring construction of the two documents is introduced by the opening sentence of the Release, which expressly states that it is tendered "[i]n accordance with the terms of the [Settlement] Agreement," and that "the terms of [the Settlement Agreement] are expressly incorporated by reference in the . . . [R]elease." (Release, p. 1.) By incorporating the broader terms of the Settlement Agreement into the General Release, the parties arguably expanded the release beyond the scope of its express terms.
Against this background, the Court concludes that the parties' 1989 Settlement Agreement and written Release do not lend themselves to a plain language interpretation. To ascertain the true meaning of the drafters' words when they framed those documents, the Court must examine extrinsic evidence as to the parties' intent. In New York, as in Connecticut, if "a contract provision is reasonably susceptible of more than one interpretation, facts and circumstances parol to the agreement can be considered to determine the intention of the parties," including conversations and negotiations made prior to or contemporaneous with the contract in question and the purpose or object of the contract. WinstonCT Page 10441v. Mezzanine Investments, L.P., 648 N.Y.S.2d 493 (NY Sup. Ct. 1996).
Such questions, however, typically cannot be decided on a motion for summary judgment because they involve issues of fact that must be determined by the finder of fact. See Nolan v. Borkowski, supra,206 Conn. at 505. For the following reasons, this case is no exception to the general rule.
Though Vanderbilt has adduced evidence from its counsel, Dennis Race, concerning conversations he had during settlement negotiations with his counterpart from CNA, those conversations at most establish a triable issue of fact as to the intention of the parties when they agreed to the terms of the Settlement Agreement and Release. The central thesis of Mr. Race's affidavit was that even though CNA sought a broad settlement agreement, it never suggested, and the parties never considered, any agreement that would cover claims arising away from Bethel at other sites.
Attorney Race's recollection of the negotiations, moreover, has been flatly contradicted by his CNA counterpart in those negotiations, Stuart C. Levene. Mr. Levene, in an affidavit dated December 15, 1998, averred that
 In settling with Vanderbilt, CNA's express goal was to never hear of another claim concerning Vanderbilt's chemical manufacturing activities at the Bethel facility[.] . . . Because of this, CNA at the time paid $1.3 million for a release which CNA believed incorporated all potential future claims arising out of or relating to the Bethel facility. This included not only claims for the cleanup at the Bethel facility, but also off-site pollution claims that occurred due to Vanderbilt's chemical manufacturing activities at Bethel and thus had Bethel as its origination point. Lawyers who deal with pollution matters know that pollution liabilities usually attach (i) for waste dumped at or near the site or (ii) for waste carted off ("transported" in official terminology) to other locations ("off-site dumping"). CNA wanted all forms of Bethel pollution released. This intent was clearly set forth in the plain words that were included in the settlement agreement and release.
Levene Affidavit (12/15/98), ¶ 5. CT Page 10442
In light of these statements, the parties find themselves
in a hot factual dispute that cannot appropriately be decided on a motion for summary judgment. Accordingly, that portion of CNA's Cross Motion For Summary Judgment which is based upon the claim that it was released from all claims for which Vanderbilt seeks coverage in this case must be DENIED.
As for Vanderbilt's Motion For Partial Summary Judgment, however, Vanderbilt argues that since the effect of the General Release was to amend its subject insurance policies to exclude all coverage for released claims, it is entitled, as the insured, to the narrowest reasonable interpretation of the exclusion made possible by its disputed language. For the following reasons, the Court disagrees.
What is truly at issue here is not the scope of the policy exclusion, which is narrowly written, but that of the Release and the Releases provision of the Settlement Agreement, which arguably have a broader meaning. This is so because the broad language in the Settlement Agreement, incorporated by reference into the text of the Release, does not apply to the new policy exclusion or modify it in any way. Thus the rule that insurance policies must be interpreted and enforced in the manner most favorable to the insured is not applicable to the defendant's claim of release.
The question truly presented for decision is whether or not the Settlement Agreement and Release effected a broader release of liability than the policy exclusion itself. On this score, Vanderbilt argues that since CNA drafted the language of the Settlement Agreement and the Release, those documents must be construed against them under the rule ofcontra proferentem.
Though it is undisputed that the documents in question were drafted by counsel for CNA, they clearly resulted from arm's-length settlement negotiations between sophisticated commercial parties, both of which were represented at all times by competent, experienced counsel. Not surprisingly, each party took note of this fact when presenting its written arguments as to why, under governing principles of New York law, the plain and unambiguous language of a release negotiated in a commercial context must be strictly enforced. Therefore, lacking any reason to believe that Vanderbilt was disadvantaged in its settlement negotiations with CNA by CNA's initial drafting of the documents that expressed and embodied their ultimate agreement, the Court is unwilling to construe any ambiguity in those documents against CNA.
In sum, the Court concludes that there is a genuine issue of material CT Page 10443 fact as to the viability of CNA's special defense of release, as it applies to Vanderbilt's claims for coverage under its 1965 and 1968 CNA Policies with respect to the EPA's SRSNE and OSL Actions against it. Accordingly Vanderbilt's Motion For Partial Summary Judgment with respect to those claims must also be DENIED.
 CONCLUSION
For all of the foregoing reasons, Vanderbilt's Motion For Partial Summary Judgment and that aspect of CNA's Cross Motion For Summary Judgment which is based on its claim of release under its 1989 Settlement Agreement with Vanderbilt are hereby DENIED.
IT IS SO ORDERED THIS 16th day of August, 2002.
 __________________, J. MICHAEL R. SHELDON